# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CA-00326-SCT

*COMPERE'S NURSING HOME, INC.,*
*PLUMPOINT CHRISTIAN LIVING CENTER, INC.*
*f/k/a FRANKLIN NURSING CENTERS, INC.,*
*HUGH C. FRANKLIN AND CHRISTOPHER*
*PLUMLEE*

*v.*

*THE ESTATE OF MINNIE FARISH, BY AND*
*THROUGH WILLIE JAMES LEWIS, SR.,*
*INDIVIDUALLY AND AS PERSONAL*
*REPRESENTATIVE, FOR THE USE AND*
*BENEFIT OF THE ESTATE OF MINNIE*
*FARISH, AND FOR THE USE AND BENEFIT OF*
*THE WRONGFUL DEATH BENEFICIARIES OF*
*MINNIE FARISH*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/31/2007 |
| TRIAL JUDGE: | HON. BOBBY BURT DELAUGHTER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | PAUL HOBART KIMBLE |
| | STEVEN MARK WANN |
| | HEATHER MARIE ABY |
| ATTORNEY FOR APPELLEE: | DOUGLAS BRYANT CHAFFIN |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 05/22/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., CARLSON AND DICKINSON, JJ.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.     The plaintiff alleges injury and death as a result of the negligence of a nursing home.

The trial court denied defendant's motion to compel arbitration. We affirm.

## STATEMENT OF THE FACTS

¶2.     On May 12, 2003, Minnie Farish was admitted to Compere's Nursing Home by her nephew, Larry Farish. The admissions paperwork contained an arbitration clause requiring arbitration of claims arising from healthcare provided by the nursing home.  In signing the admissions agreement, Larry Farish warranted that he had "authority, either express or implied or apparent, to act as agent for the resident and to execute this agreement on resident's behalf."

¶3.     After Ms. Farish passed away, her estate filed suit against the nursing home and other defendants.  The defendants filed a motion to compel arbitration, which the trial court denied. It is from this order that the defendants appeal.

## ANALYSIS

## I.

¶4.     When reviewing a trial court's disposition of a motion to compel arbitration, we apply a de novo standard of review, using a two-pronged inquiry. *Sullivan v. Mounger*, 882 So. 2d 129, 132 (Miss. 2004).  The first prong focuses on whether there is a valid arbitration agreement.  *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 713 (Miss. 2002).  The second prong requires a determination of whether the parties' dispute is within the scope of the arbitration agreement.  *Id*.   Because the defendants fail to survive analysis under the first prong, the second need not be addressed.

¶5.     In applying the first prong of the *East Ford* test, we first note that it is undisputed that Ms. Farish did not sign the arbitration agreement.  The defendants, claiming she was nonetheless bound to the agreement by the signature of her nephew, Larry Farish, offer three

theories: (1) Larry Farish possessed authority as Ms. Farish's health-care surrogate; (2) Larry Farish possessed apparent authority to sign the agreement on behalf of Ms. Farish; and (3) Ms. Farish was a third-party beneficiary of the agreement signed by Larry Farish.

**II.**

¶6.     The defendants assert that Larry Farish was Ms. Farish's "health care surrogate," as provided by Section 41-41-211 of the Mississippi Code, which states, in relevant part:

(1)     A surrogate may make a health-care decision for a patient who is an adult or emancipated minor if the patient has been determined by the primary physician to lack capacity and no agent or guardian has been appointed or the agent or guardian is not reasonably available.

(2)     An adult or emancipated minor may designate any individual to act as surrogate by personally informing the supervising health-care provider. In the absence of a designation, or if the designee is not reasonably available, any member of the following classes of the patient's family who is reasonably available, in descending order of priority, may act as surrogate:

(a)     The spouse, unless legally separated;

(b)     An adult child;

(c)     A parent; or

(d)     An adult brother or sister.

(3)     If none of the individuals eligible to act as surrogate under subsection (2) is reasonably available, an adult who has exhibited special care and concern for the patient, who is familiar with the patient's personal values, and who is reasonably available may act as surrogate.

Miss. Code Ann. § 41-41-211 (Rev. 2005).

¶7.     The record contains no evidence that Larry Farish meets the statutory requirements of a healthcare surrogate. First, there is no evidence that Ms. Farish had "been determined

3

by [her] primary physician to lack capacity." Second, although there is evidence in the record that Ms. Farish had a living adult child who, under the statute, would have priority to serve as her surrogate, the record contains no evidence that her adult child was unavailable or unwilling to act as a surrogate. Finally, Larry Farish does not fall under any of the statute's enumerated categories of those who may act as a surrogate. Nor is there evidence in the record that Larry Farish exhibited special care and concern for Ms. Farish, or that he was familiar with her personal values. Thus, we cannot say the trial court erred in refusing to find that Larry Farish was Ms. Farish's healthcare surrogate.

### III.

¶8.    Defendants next claim that Larry Farish possessed apparent authority to bind Ms. Farish to the arbitration agreement. In evaluating a party's claim that an agent's apparent authority binds the principal, we must determine whether the party detrimentally relied on acts or conduct of the principal. *Gulf Guaranty Life Ins. Co. v. Middleton*, 361 So. 2d 1377, 1383 (Miss. 1978) (citing *Steen v. Andrews*, 78 So. 2d 881, 883 (Miss. 1955)). We find no evidence in the record of any act or conduct by Ms. Farish that would mislead anyone into believing that Larry Farish was her agent.[1] Having failed to satisfy the first prong of the *Gulf Guaranty* test, it is unnecessary to address the remaining two.

### IV.

¶9.    Finally, the defendants argue that Ms. Farish should be bound to the arbitration agreement under the doctrine of equitable estoppel, which is a

---

[1]The record is void of evidence that Ms. Farish was aware of Larry Farish's warranty that he had her authority to sign the arbitration agreement on her behalf. Thus, Larry Farish's warranty is irrelevant, since establishing apparent authority requires acts or conduct by the principal. *Id.*

4

principle by which a party is precluded from denying any material fact, induced *by his own words or conduct* upon which a person relied, whereby the person changed his position in such a way that injury would be suffered if such denial or contrary assertion was allowed.

*Koval v. Koval*, 576 So. 2d 134, 137 (Miss. 1991) (emphasis supplied). As previously stated, the record provides no evidence that Ms. Farish said or did anything upon which misled the nursing home into believing that she had authorized Larry Farish to sign the agreement. Therefore, we cannot say the trial court abused its discretion in holding that Ms. Farish cannot be bound under the theory of equitable estoppel.

¶10. The trial court initially concluded that Larry Farish did not have authority to bind Ms. Farish to arbitration. The court later stated, "this Court finds that Larry Farish's authority is limited to the areas of health care and business affairs, which do not include the ability to bind Minnie Farish to arbitration agreements." In addressing only the issue before us, we find that Larry Farish had no authority to bind Ms. Farish to an arbitration agreement, and we decline to address the trial court's analysis of the limits of Larry Farish's non-existent authority.

## CONCLUSION

¶11. For these reasons, the decision of the trial court to refusing to compel arbitration is affirmed.

¶12. **AFFIRMED**.

**SMITH, C.J., WALLER AND DIAZ, P.JJ., EASLEY, CARLSON, RANDOLPH AND LAMAR, JJ., CONCUR. GRAVES, J., CONCURS IN PART AND IN RESULT.**