**Certiorari Denied, October 15, 2010, No. 32,612**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2010-NMCA-105**

**Filing Date: July 29, 2010**

**Docket No. 28,314**

**SHERRI CORUM, as Personal Representative**
**of the wrongful death beneficiaries of**
**MARY JO HEBERT, deceased,**

        **Plaintiff-Appellee,**

**v.**

**ROSWELL SENIOR LIVING, LLC, d/b/a**
**ROSWELL SENIOR LIVING COMMUNITY,**
**a/k/a LA VILLA, SUNWEST MANAGEMENT,**
**INC., JON M. HARDER, DARRYL E. FISHER,**
**DIVINE INVESTMENTS, LLC, THE FISHER**
**JOINT REVOCABLE TRUST, DIEDRA J.**
**DUVALL, Administrator, and DOES 1 through 100,**

        **Defendants-Appellants.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**James A. Hall, District Judge**

Harvey Law Firm, LLC
Dusti D. Harvey
Feliz A. Rael
Jennifer J. Foote
Albuquerque, NM

for Appellee
Keleher & McLeod, P.A.
Thomas C. Bird
Spring V. Schofield
Kathleen M. Wilson
Albuquerque, NM

1

for Appellants

AARP Foundation
Kelly Bagby
Washington, DC

Doerr & Knudson P.A.
Randy Knudson
Portales, NM

for Amicus Curiae, AARP

**OPINION**

**ROBLES, Judge.**

{1}     Roswell Senior Living, LLC, d/b/a Roswell Senior Living Community, a/k/a La Villa, Sunwest Management, Inc., and other investors (collectively, Defendants) appeal from the district court's denial of a motion to compel arbitration.  On appeal, we are asked to clarify the authority of surrogacy within the context of the New Mexico Health-Care Decisions Act (the Act), NMSA 1978, §§ 24-7A-1 to -18 (1995, as amended through 2009). In this case, a purported surrogate for a person admitted into the Roswell Senior Living Community signed an admission agreement that contained an arbitration clause. On appeal, the parties take opposite positions as to whether the purported surrogate had authority to agree to arbitration.  They argue over whether the agreement to arbitrate is a health-care decision that, under the Act, surrogates are permitted to make.  We conclude that the critical, first-step requirement or condition precedent to admission was not followed, and because proof of that first step must be  established before we can venture into whether a surrogate's agreement to arbitrate was a permitted health-care decision, we do not discuss whether a surrogate has the authority to enter an agreement to arbitrate.  That first, critical, and essential requirement or condition precedent is whether the person admitted to the facility was admitted based on conclusions of two physicians in regard to the capacity of the person admitted.  In addition, a second requirement is that, if there exists an individual with the express power to make health-care decisions on behalf of a principal, there must be a showing of that individual's approval or unavailability before a surrogate may make health-care decisions.  We hold that there is no showing in the record that either of the two foregoing requirements were satisfied.  We also address Defendants' final contention that the district court applied special scrutiny to the agreement to arbitrate, which is not allowed by the Federal Arbitration Act.  Upon review, we do not come to the conclusion that the district court applied special scrutiny. We therefore affirm the district court's denial of the motion to compel.

## I.      BACKGROUND

**{2}**     In December 2003, Mary Jo Hebert executed a two-part power of attorney titled "DURABLE FINANCIAL & MEDICAL POWER OF ATTORNEY," in which Article I set forth financial powers granted, and Article II set forth medical powers granted. Both sections became effective immediately upon signing and designated Hebert's daughter, Sherri Lynn Corum, as attorney-in-fact. On March 15, 2006, Hebert was admitted into Defendants' nursing home facility, La Villa, by her husband, Edward Hebert (Husband). At the time, Husband had no written authority designating him as an agent with power of attorney, guardian, or designation as a surrogate. Husband signed La Villa's "Assisted Living Admission Agreement" in the areas provided, which were titled "Responsible Party" and as "Guarantor." The document stated:

> [T]he term "Responsible Party" shall have the same meaning as "agent," "concerned person" and "surrogate decision maker" under New Mexico law and means an agent under a valid power of attorney or designated in writing by the Resident; a legally appointed guardian; or an executor, executrix, administrator or administratrix of the estate of the deceased Resident.

(Emphasis omitted.) The parties are in agreement that, on the day of admission to La Villa, Hebert lacked capacity to enter the agreement for herself. On June 4, 2007, Corum filed a complaint against Defendants on behalf of Hebert, alleging wrongful death, negligence, misrepresentation, and violation of the Unfair Trade Practices Act. Defendants responded by requesting that the district court stay the proceedings and compel arbitration. Attached to their motion to compel, Defendants supplied the court with an affidavit of La Villa's administrator, which stated that, on the day Husband signed the agreement, the administrator attempted to call Corum, but was unsuccessful. Following a hearing on the motion, the district court denied Defendants' motion, finding that Husband did not have the power to enter the arbitration agreement.

## II.     DISCUSSION

**{3}**     "We apply a de novo standard of review [from a lower] court's denial of a motion to compel arbitration." *Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶ 11, 146 N.M. 256, 208 P.3d 901; *Medina v. Holguin*, 2008-NMCA-161, ¶ 7, 145 N.M. 303, 197 P.3d 1085. The question of whether a valid contract to arbitrate a dispute exists is a question of contract law. *DeArmond v. Halliburton Energy Servs., Inc.*, 2003-NMCA-148, ¶ 9, 134 N.M. 630, 81 P.3d 573. The party attempting to compel arbitration carries the burden of demonstrating a valid arbitration agreement. *See id.*; *Flores v. Evergreen at San Diego, LLC*, 55 Cal. Rptr. 3d 823, 826 (Ct. App. 2007); *Goliger v. AMS Props., Inc.*, 19 Cal. Rptr. 3d 819, 820 (Ct. App. 2004).

### A.     The Parties' Arguments Relating to Surrogacy

**{4}**     Both parties allege that Husband was a surrogate. Defendants argue that regardless of Hebert's designation of Corum as attorney-in-fact, Husband had the authority as surrogate to sign the admission agreement and bind Hebert and, therefore, Corum, to the arbitration clause within the agreement. Corum contends that the arbitration clause within the

3

admission agreement can be held as void as a matter of law without nullifying the rest of the admission agreement, that the clause is void because a surrogate only has power to make health-care decisions, and an agreement to arbitrate is not focused on health care. Corum notes that the admission agreement contains a severability clause that states "[i]f any term or provision of this Agreement proves to be invalid, illegal or unenforceable, the remainder of this Agreement shall remain in full force and effect."

**{5}**     The Act closely follows the Uniform Health-Care Decisions Act (the Uniform Act) approved in 1993 by the National Conference of Commissioners on Uniform State Laws. *See* Unif. Health-Care Decs. Act §§ 1 to 19 (1993); *see also Protection & Advocacy Sys., Inc. v. Presbyterian Healthcare Servs.*, 1999-NMCA-122, ¶ 6, 128 N.M. 73, 989 P.2d 890. Our interpretation of the Act should effectuate the purpose of uniformity with other states that have likewise adopted the Uniform Act. *See* NMSA 1978, § 12-2A-18(B) (1997). Both parties in this appeal urge this Court to consider other jurisdictions that have interpreted the same or similar statute or have applied a rule that provides guidance in similar situations. *See* NMSA 1978, § 12-2A-20(B)(1), (2) (1997) (stating that as an aide to construction, courts may consider other jurisdictions' interpretations of uniform acts or same or similar statutes). Statutory interpretation "should begin with an examination of the statute's language, which is the primary indicator of legislative intent[.]" *Gonzales v. State Pub. Employees Ret. Ass'n*, 2009-NMCA-109, ¶ 13, 147 N.M. 201, 218 P.3d 1249 (internal quotation marks and citation omitted). "In construing a statute, our charge is to determine and give effect to the Legislature's intent." *Marbob Energy Corp. v. N.M. Oil Conservation Comm'n*, 2009-NMSC-013, ¶ 9, 146 N.M. 24, 206 P.3d 135. The plain meaning rule requires a court to give effect to the statute's language and refrain from further interpretation when the language is clear and unambiguous. *U.S. Xpress, Inc. v. State ex rel. N.M. Taxation & Revenue Dep't*, 2006-NMSC-017, ¶ 11, 139 N.M. 589, 136 P.3d 999. "If, however, the language of the statute is ambiguous, we must interpret the statute, and determine legislative intent." *Hanson v. Turney*, 2004-NMCA-069, ¶ 7, 136 N.M. 1, 94 P.3d 1.

**{6}**     In New Mexico,

> [a] surrogate may make a health-care decision for a patient who is an adult or emancipated minor if the patient has been determined according to the provisions of Section 24-7A-11 . . . to lack capacity and no agent or guardian has been appointed or the agent or guardian is not reasonably available.

Section 24-7A-5(A). A "surrogate" is defined as "an individual, other than a patient's agent or guardian, authorized under the [Uniform Act] to make a health-care decision for the patient." Section 24-7A-1(V). A surrogate may be created in one of two ways. First, a principal may designate an individual as a surrogate "by personally informing the supervising health-care provider." Section 24-7A-5(B). Second, the statute also provides that

4

[i]n the absence of a designation or if the designee is not reasonably available, any member of the following classes of the patient's family who is reasonably available, in descending order of priority, may act as surrogate:

      (1)    the spouse, unless legally separated or unless there is a pending petition for annulment, divorce, dissolution of marriage or legal separation;

      (2)    an individual in a long-term relationship of indefinite duration with the patient in which the individual has demonstrated an actual commitment to the patient similar to the commitment of a spouse and in which the individual and the patient consider themselves to be responsible for each other's well-being;

      (3)    an adult child;

      (4)    a parent;

      (5)    an adult brother or sister; or

      (6)    a grandparent.

C.    If none of the individuals eligible to act as surrogate under Subsection B of this section is reasonably available, an adult who has exhibited special care and concern for the patient, who is familiar with the patient's personal values and who is reasonably available may act as surrogate.

Section 24-7A-5(B), (C).

**{7}**    A surrogate's power is limited to making health-care decisions, which are defined as:

G.    [A] decision made by an individual or the individual's agent, guardian or surrogate, regarding the individual's health care, including:

      (1)    selection and discharge of health-care providers and institutions;

      (2)    approval or disapproval of diagnostic tests, surgical procedures, programs of medication and orders not to resuscitate;

      (3)    directions relating to life-sustaining treatment, including withholding or withdrawing life-sustaining treatment and the termination of life support; and

      (4)    directions to provide, withhold or withdraw artificial nutrition and hydration and all other forms of health care[.]

Section 24-7A-1(G).

**{8}**    We note that other jurisdictions have concluded that an individual with the power to make health-care decisions lacks the authority to bind a principal to an arbitration clause within a nursing home's admission agreement based on the rationale that an agreement to arbitrate a potential future dispute is not a health-care decision. *Pagarigan v. Libby Care Ctr., Inc.*, 120 Cal. Rptr. 2d 892, 895 (Ct. App. 2002); *Flores*, 55 Cal. Rptr. 3d at 828-29; *Goliger*, 19 Cal. Rptr. 3d at 821; *Lujan v. Life Care Ctrs. of Am.*, 222 P.3d 970, 976 (Colo. App. 2009); *Life Care Ctrs. of Am. v. Smith*, 681 S.E.2d 182, 185 (Ga. Ct. App. 2009). Other

courts have held that entering into an arbitration agreement that is part of a nursing home's admissions criteria is part of the health-care decision-making process. *Hogan v. Country Villa Health Servs.*, 55 Cal. Rptr. 3d 450, 451 (Ct. App. 2007); *Garrison v. Super. Ct.*, 33 Cal. Rptr. 3d 350, 359-60 (Ct. App. 2005). Before we reach the question of whether a decision to arbitrate can be considered a health-care decision, we examine the arbitration agreement to determine whether there is a valid contract. *DeArmond*, 2003-NMCA-148, ¶ 8 ("However, a legally enforceable contract is still a prerequisite for arbitration; without such a contract, parties will not be forced to arbitrate.").

{9}     We do not reach the question of whether an agreement to arbitrate can be considered a health-care decision because it is clear from the record no evidence exists that Husband met a statutory condition precedent to permit him to act in any regard as a health-care surrogate. Neither side claims that Hebert designated Husband as a surrogate pursuant to Section 24-7A-5(B) while she had capacity. Instead, both sides claim that Husband had surrogacy authority, presumably because (1) both sides agree that Hebert lacked capacity; (2) there is no dispute as to whether Corum was or was not reasonably available; and (3) Husband, as a spouse, qualifies as a class of person that can make health-care decisions for Hebert given this set of circumstances. *See* § 24-7A-5(B)(1). But these agreements are not supported by findings in the record, and the circumstances of the case cause us to disagree with both parties' assertions.

{10}     Under the Act, a patient is presumed to have the capacity to make his or her own health-care decisions. Section 24-7A-11(B) ("An individual is presumed to have capacity to make a health-care decision, to give or revoke an advance health-care directive and to designate a surrogate."). This presumption may be rebutted with the conclusion by two qualified health-care professionals that the patient lacks capacity. Section 24-7A-11(C) ("Unless otherwise specified in a written advance health-care directive, a determination that an individual lacks or has recovered capacity or that another condition exists that affects an individual instruction or the authority of an agent *shall be made* by two qualified health-care professionals, one of whom shall be the primary physician." (emphasis added)); NMSA 1978, § 12-2A-4 (1997) (constructing statutes and rules that contain "'[s]hall' and 'must' to express a duty, obligation, requirement or condition precedent"). There is no indication in the record before this Court that there was a determination by two physicians that Hebert lacked capacity at the time Husband signed the admission agreement.

{11}     The New Mexico Legislature has provided a specific framework in plain and unambiguous terms as to how the presumption of capacity is to be rebutted. We additionally observe that other courts have come to similar conclusions with regard to similar surrogacy statutes. In *Compere's Nursing Home, Inc. v. Estate of Farish ex rel. Lewis*, the Mississippi Supreme Court concluded that absent evidence in the record that the statutory requirement or precondition for a person to be a surrogate or to act in any regard as one had been met, the court would not hold that an individual was a surrogate. 982 So. 2d 382, 384 (Miss. 2008). *Compare* Miss. Code Ann. § 41-41-211(1) (Rev. 2005) ("A surrogate may make a health-care decision for a patient who is an adult or emancipated minor if the patient has been determined by the primary physician to lack capacity and no agent or guardian has been appointed or the agent or guardian is not reasonably available."), *with* Section 24-7A-5(A)

6

("A surrogate may make a health-care decision for a patient who is an adult or emancipated minor if the patient has been determined according to the provisions of Section 24-7A-11 . . . to lack capacity and no agent or guardian has been appointed or the agent or guardian is not reasonably available."), *and* Section 24-7A-11(C) ("Unless otherwise specified in a written advance health-care directive, a determination that an individual lacks or has recovered capacity . . . shall be made by two qualified health-care professionals, one of whom shall be the primary physician."). The district court in *Compere's Nursing Home, Inc.* had concluded that the signatory of the arbitration agreement had the authority to make health-care and business-related decisions, but lacked the authority to bind the principal to an arbitration agreement, presumably because an arbitration agreement was neither health care nor business related. In *Compere's Nursing Home, Inc.*, the Mississippi Supreme Court affirmed by concluding that there was no statutorily required demonstration that the signatory qualified as a surrogate and, therefore, the signatory lacked the authority to bind the principal to the arbitration agreement. 982 So. 2d at 384. The court declined to address the district court's conclusions concerning whether an agreement to arbitrate is a health-care decision. *Id.*; *see Magnolia Healthcare, Inc. v. Barnes ex rel. Grigsby*, 994 So. 2d 159, 162 (Miss. 2008) (Dickinson, J., concurring) (stating that an individual cannot serve as a statutory health-care surrogate without fulfilling the statutory requirements that include a determination as to whether a patient lacks capacity to make a health-care decision on their own behalf). Likewise, in *Monticello Community Care Center, LLC v. Estate of Martin ex rel. Peyton*, neither the plaintiff nor the defendant had submitted a statement from the principal's primary physician stating that, at the time the arbitration agreement was signed by the signatory, the principal lacked capacity to make health-care decisions on his own. 17 So. 3d 172, 180 (Miss. Ct. App. 2009). The court concluded that without evidence by a physician that the principal lacked the capacity to make his own health-care choices, there was insufficient evidence in the record to support a finding that the signatory qualified as a health-care surrogate. *Id.* at 180.

**{12}** Tennessee, a state with a similar statutory scheme to that in New Mexico, has likewise addressed this issue. *See* Tenn. Code Ann. §§ 68-11-1801 to -15 (2004). The court in *McKey v. National Healthcare Corporation* determined that even when the plaintiff had conceded at oral argument that the principal lacked capacity at the time that her daughter admitted her into a nursing home and signed an agreement to arbitrate, such a concession did not equate to a finding by a physician that a principal lacked capacity to make their own health-care decisions. No. M2007-02341-COA-R3-CV, 2008 WL 3833714, at *3 (Tenn. Ct. App. Aug. 15, 2008). The court stated that "[t]he Tennessee Health Care Decision Act affects what our courts have described as a fundamental right: personal autonomy, which includes the ability to make one's own decisions about health care." *Id.* Without a determination in the record that the principal lacked capacity, the court was "unwilling to overlook the statutory requirements" necessary to overcome the presumption of capacity. *Id. Compare* Tenn. Code Ann. § 68-11-1803(d) ("A determination that an individual lacks or has recovered capacity, or that another condition exists that affects an individual instruction or the authority of an agent, must be made by the designated physician."), *with* Section 24-7A-11(C) ("Unless otherwise specified in a written advance health-care directive, a determination that an individual lacks or has recovered capacity or that another condition exists that affects an individual instruction or the authority of an agent shall be made by two

qualified health-care professionals, one of whom shall be the primary physician."). Several months later, Tennessee reaffirmed the proposition that the Tennessee Health Care Decisions Act requires a determination that a principal lacks capacity before an individual has the authority to act as a surrogate on behalf of the principal. *Barbee v. Kindred Healthcare Operating, Inc*., No. W2007-00517-COA-R3-CV, 2008 WL 4615858, at *11-12 (Tenn. Ct. App. Oct. 20, 2008). We consider such a required exercise of caution before assuming incapacity to be essential in protecting patient rights.

**{13}** The Act also requires that, if an agent or guardian has been appointed, a determination must be made that the agent or guardian is not reasonably available before another individual may assume the role of a surrogate with the authority to make health-care decisions on behalf of a principal. Section 24-7A-5(A); § 24-7A-1(S) (defining "reasonably available" as "readily able to be contacted without undue effort and willing and able to act in a timely manner considering the urgency of the patient's health-care needs"). In this case, Corum had durable financial and medical power of attorney over Hebert. Defendants supplied the district court with an affidavit of La Villa's administrator, which stated that, on the day Husband signed the agreement, the administrator "attempted to contact . . . Corum at the phone number provided by [Husband] but determined that it was not a valid phone number for . . . Corum." The administrator's affidavit also states that she "inquired as to any additional phone numbers for . . . Corum but was advised by [Husband] that he was unaware of any other phone numbers for . . . Corum." These facts, however, do not demonstrate that Corum could not be contacted without undue effort, that she was unwilling or unable to participate, or that she could not respond in a timely fashion given the urgency of the situation. Section 24-7A-5(A); § 24-7A-1(S). Moreover, there is no finding on this point from the district court. If an individual has been selected and given authority by a principal to make health-care decisions on the principal's behalf, it is statutorily required that the selected person with authority be unavailable before another individual will be given the authority to make health-care decisions on the principal's behalf. *Id.*; *see Compere's Nursing Home, Inc.*, 982 So. 2d at 384-85 (concluding that the record was devoid of evidence that demonstrated that the principal's adult child, who would have had priority to serve as surrogate under the statute, was unavailable or unwilling to act as a surrogate); *Monticello Cmty. Care Ctr., LLC*, 17 So. 3d at 180-81 (concluding that a signatory of a nursing home admission agreement with an arbitration clause lacked power as a surrogate to bind the principal when the principal's sister was appointed as the attorney-in-fact to make health-care decisions on his behalf, and there was no showing that she was not reasonably available).

**{14}** In *Protection and Advocacy System, Inc.*, this Court held that the Uniform Act "focuses primarily on the procedures for decision making rather than the content of decisions." 1999-NMCA-122, ¶ 16. Because "different patients can make markedly different, but still reasonable, choices, depending on their religious beliefs, their assessments of the joys of life, their tolerance for pain, their regard for others, and a multitude of other factors," a patient's individual preferences should be paramount. *Id.* The Act gives a patient the choice of who is most capable of making the decisions that the patient would want made on their behalf. *Id.* It is only when there has been no selection of an agent, guardian, or surrogate that the default surrogate selection comes into place and health-care decisions can

be made by individuals who were not previously chosen to make decisions on behalf of the patient. *Id.* We also observe that other provisions of the Act underscore the rights of the patient/principal. *See* § 24-7A-5(F) ("A surrogate shall make a health-care decision *in accordance with the patient's individual instructions*, if any, *and other wishes to the extent known to the surrogate.* Otherwise, the surrogate shall make the decision in accordance with the surrogate's determination of the *patient's best interest.* In determining the patient's best interest, the surrogate shall *consider the patient's personal values* to the extent known to the surrogate." (emphasis added)); § 24-7A-5(I) ("A patient, at any time, may disqualify any person, including a member of the patient's family, from acting as the patient's surrogate."); § 24-7A-7(A) ("Before implementing a health-care decision made for a patient, a supervising health-care provider shall promptly communicate to the patient the decision made and the identity of the person making the decision."); § 24-7A-11(E) ("An individual, at any time, may challenge a determination that the individual lacks capacity . . . . Such a challenge shall prevail unless otherwise ordered by the court.").

**{15}** As we have already stated, the Act closely mirrors the Uniform Act approved in 1993 by the National Conference of Commissioners on Uniform State Laws. The Prefatory Note of the Uniform Act likewise recognizes a patient's right to make their own medical decisions. The note states, in pertinent part:

> [T]he Act acknowledges the right of a competent individual to decide all aspects of his or her own health care in all circumstances, including the right to decline health care or to direct that health care be discontinued, even if death ensues. An individual's instructions may extend to any and all health-care decisions that might arise and, unless limited by the principal, an agent has authority to make all health-care decisions which the individual could have made. The Act recognizes and validates an individual's authority to define the scope of an instruction or agency as broadly or as narrowly as the individual chooses.

**{16}** Regardless of any concessions made below, the statutory presumption is that an individual has capacity to make their own health-care choices. Section 24-7A-11(B); *McKey*, 2008 WL 3833714, at *3. Our Legislature, in adopting the various provisions outlined above, created a framework that protects the citizens of our state and assures that medical decisions are made according to each individual's desires and best interests. Neither party in this case had the ability to stipulate to a circumstance in conformity with an essential initial requirement of the statute or statutory condition precedent without proof that the requirement or condition was fulfilled. As the party moving to compel arbitration, Defendants had the burden to demonstrate a valid agreement to arbitrate. *DeArmond*, 2003-NMCA-148, ¶ 9. The district court concluded that there was not a valid contract to arbitrate because Husband lacked the power to enter into the agreement. It is not entirely clear from the record on what specific basis this was concluded. However, as stated earlier in this Opinion, we decline to reach the question of whether agreeing to arbitration is a health-care decision, and we conclude that the district court's denial of the motion to compel was correct because, as we determine in this Opinion, Husband lacked any authority to be a surrogate in any regard. *See Compere's Nursing Home, Inc.*, 982 So. 2d at 384; *see also*

9

*Cordova*, 2009-NMSC-021, ¶ 18 ("Even if the issue had not been preserved below, it is established law that our appellate courts will affirm a district court's decision if it is right for any reason, so long as the circumstances do not make it unfair to the appellant to affirm.").

**B.     The Federal Arbitration Act**

**{17}**     The nursing facility's admission agreement specifies that "the Agreement is subject to the Federal Arbitration Act [FAA] regarding dispute resolution[,]" and both parties agree that the FAA governs the arbitration agreement.  On appeal, Defendants assert that the district court's oral statements made while denying the motion to compel arbitration evidences reasoning that "implies that a contractual agreement to arbitrate is entitled to more careful scrutiny under the [Act]."  Specifically, Defendants quote the district court's statement:  "And while our case law, like all states' case law, includes a strong belief in enforcing agreements to arbitrate, I think it's a completely different matter when we're talking about waiving the right to trial."

**{18}**     Defendants correctly note that the FAA does not allow for special scrutiny to be applied to arbitration agreements.  *See* 9 U.S.C. § 2 (2006) ("A written provision . . . to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract.*" (emphasis added)); *Fiser v. Dell Computer Corp.*, 2008-NMSC-046, ¶ 23, 144 N.M. 464, 188 P.3d 1215 (stating that the FAA only requires that arbitration agreements be placed on "the same footing as other contracts" (internal quotation marks and citation omitted)).  However, on review of the district court's statements, we view the ruling as simply concluding that the agreement to arbitrate fell outside of the authority granted by the Act.  The district court also stated:  "I do not believe [Husband] had the power to . . . enter into an agreement to arbitrate.  This really comes down to an evaluation of the statutory scope of the [H]ealth[-C]are [D]ecision [A]ct, specifically, the decision by surrogate clause."  We therefore cannot say that the district court reviewed the arbitration clause with any special scrutiny.

**III.     CONCLUSION**

**{19}**     We affirm the district court's denial of Defendants' motion to compel arbitration, and we remand for further proceedings.

**{20}     IT IS SO ORDERED.**

_____
**ROBERT E. ROBLES, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

10

_____
**RODERICK T. KENNEDY, Judge**

**Topic Index for** *Corum v. Roswell Senior Living, LLC*, **Docket No. 28,314**

| **AE** | **APPEAL AND ERROR** |
|---|---|
| AE-SR | Standard of Review |

| **CN** | **CONTRACTS** |
|---|---|
| CN-CA | Capacity |
| CN-CP | Condition Precedent or Subsequent |

| **DR** | **DOMESTIC RELATIONS** |
|---|---|
| DR-GC | Guardians and Conservators |

| **FL** | **FEDERAL LAW** |
|---|---|
| FL-AA | Arbitration Act, Federal |

| **MS** | **MISCELLANEOUS STATUTES** |
|---|---|
| MS-HC | Health Care Decisions Act |

| **RE** | **REMEDIES** |
|---|---|
| RE-AN | Arbitration |

| **ST** | **STATUTES** |
|---|---|
| ST-IP | Interpretation |

| **WL** | **WILLS, TRUSTS AND PROBATE** |
|---|---|
| WL-CM | Competence |
| WL-PA | Power of Attorney |