This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36609**

**STURE ROSENQUIST, Deceased, by the Personal Representative of the Wrongful Death Estate, CORNELIA ROSENQUIST,**

       Plaintiff-Appellee,

v.

**GENESIS HEALTHCARE, LLC, now d/b/a GENESIS HEALTHCARE, INC.; PEAK MEDICAL NEW MEXICO NO. 3, INC. d/b/a LAS PALOMAS CARE AND REHABILITATION CENTER; and LISA HANCHETT, Administrator,**

       Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Victor S. Lopez, District Judge**

Harvey and Foote Law Firm, LLC
Jennifer J. Foote
Dusti Harvey
Albuquerque, NM

for Appellee

Quintairos, Prieto, Wood & Boyer, P.A.
Frank Alvarez
Jo Beth Drake
Dallas, TX

for Appellants

### MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}** This case arises out of a wrongful death suit brought against a nursing home and concerns the enforceability of an arbitration agreement signed by Cornelia Rosenquist, the wife of Sture Rosenquist (Decedent). Genesis Healthcare, LLC, Peak Medical New Mexico No. 3, Inc., and Lisa Hanchett (collectively, Defendants) appeal the district court's denial of their motion to compel arbitration. We affirm.

## BACKGROUND

**{2}** Three days after Decedent's admission to Las Palomas Care and Rehabilitation Center (the Facility), an assistant admissions coordinator at the Facility presented Mrs. Rosenquist—who was also a resident at the Facility—with numerous admission documents and consent forms for Decedent. Mrs. Rosenquist signed all of the documents, including a voluntary binding arbitration agreement (the Agreement), as "Patient's Representative in his/her individual capacity and in his/her capacity as power of attorney, legal guardian or agent authorized to bind Patient to this Agreement." She also signed a "Representative Designation" form stating that she agreed to act as Decedent's representative and had "provided . . . documents as proof of [her] authority[.]" The record is silent as to what documentation was provided and whether Mrs. Rosenquist actually provided it. Decedent did not sign the Agreement, the Representative Designation form, or any of the other admission documents.

**{3}** Decedent resided at the Facility for a total of eight days before requiring hospitalization. He died later that same month. Mrs. Rosenquist filed a complaint alleging that Decedent suffered from contractures, weight loss, narcotic overdose, medication errors, brain hemorrhage, falls, and bedsores while in Defendants' care, and that "[he] required medical attention and hospitalization" and later died as a result of these injuries. In response to the complaint, Defendants filed a motion seeking to compel arbitration, among other things. Defendants sought to enforce the Agreement, which waived Decedent's right to a trial by judge or jury. They noted that the Agreement was "entirely voluntary, stating multiple times that [Decedent] would still receive services even if the Agreement was rejected." In support of the motion, Defendants attached: (1) the affidavit of the assistant admissions coordinator who presented Mrs. Rosenquist with Decedent's admission paperwork; the Agreement; the Representative Designation form; and several other admission documents Mrs. Rosenquist allegedly signed on behalf of Decedent.

**{4}** Mrs. Rosenquist filed a response asserting that Defendants failed to establish the existence of a valid contract because she did not have the authority to agree to arbitration on Decedent's behalf. She further argued that the Agreement was both procedurally and substantively unconscionable.

**{5}** At the non-evidentiary hearing on Defendants' motion, Defendants again argued that Mrs. Rosenquist's actions and representations were sufficient to demonstrate her authority to sign the Agreement on behalf of Decedent. Additionally, Defendants'

pointed out that neither Mrs. Rosenquist nor Decedent "ever came back, afterward, and denied such authority or tried to revoke it." Curious as to why Decedent did not sign the admission paperwork himself, the district court inquired if Decedent was competent at the time of his admission. Defendants could not answer this question and asserted that Decedent's competence was irrelevant.

{6}     At the end of the hearing, the court expressed concern whether Mrs. Rosenquist "really had authority to sign on her husband's behalf, if he was otherwise competent," particularly given that no evidence was submitted on Decedent's competence or lack of it. The court also voiced concern over Mrs. Rosenquist's allegation that she did not have her reading glasses when she signed the documents, one of the circumstances Mrs. Rosenquist argued rendered the Agreement procedurally unconscionable. Thus, the court concluded, "And so my inclination, at this point, . . . I would go ahead and rule that arbitration is not mandated by the circumstances of this case and by the motions and pleadings submitted up to this point."

{7}     Defendants then requested the opportunity to depose Mrs. Rosenquist before the district court made its ruling. Defendants explained they had previously held off on conducting discovery because they were waiting for the court to first resolve a pending motion to disqualify opposing counsel based on her prior representation of entities related to Defendants.[1]

{8}     After Plaintiff's counsel agreed to allow Defendants the opportunity to depose Mrs. Rosenquist, the district court stated,

> Yeah. I don't see a major problem with that, but I don't think we should do this piecemeal. . . . [A]t this point, I'm going to deny the motion for arbitration, subject to reconsideration, down the road, if you develop more evidence that you feel assists you and that makes this matter more clear.

Approximately two weeks later, the district court entered a written order denying the motion to compel arbitration. Among other things, the court found and concluded: (1) Defendants did not assert that Decedent was incompetent or unable to sign the Agreement at the time of his admission; (2) the Representative Designation form did not legally empower Mrs. Rosenquist to act on Decedent's behalf because it was incomplete and Mrs. Rosenquist did not provide any document to confirm Mrs. Rosenquist's authority, contrary to the form's instructions; (3) Decedent did not sign the Agreement, nor was he identified in the Agreement; and (4) despite language in the Agreement identifying Mrs. Rosenquist as Decedent's authorized representative, "[Mrs. Rosenquist] was not acting as [Decedent's] 'power of attorney,' 'legal guardian,' or 'authorized agent.' " Accordingly, the district court concluded that the Agreement did not bind Decedent's estate to arbitration. The order was silent as to whether Defendants

---

[1]Defendants filed the motion to disqualify opposing counsel a week before they filed their motion to compel. The district court denied the motion a couple weeks after the hearing. Defendants filed a petition for a writ of error seeking review of the order denying motion to disqualify shortly thereafter, which this Court ultimately denied.

were permitted to depose Mrs. Rosenquist to gather more evidence to present in a motion for reconsideration. Nor did the order discuss the issues of procedural or substantive unconscionability.

{9}     One month later, Defendants filed a motion to clarify and reconsider the order. Defendants argued that the district court had "expressly granted Defendants an opportunity to conduct discovery" on the issue of the Agreement's enforceability, but that the written order "made no mention" of its ruling on discovery. For this reason, Defendants sought clarification as to whether they could still depose Mrs. Rosenquist regarding the Agreement and refile the motion. Defendants also urged the court to reconsider its order because: (1) Mrs. Rosenquist did not offer any evidence to controvert her authority, (2) the Representative Designation form's omissions were irrelevant because the form was not necessary to give Mrs. Rosenquist authority, and (3) Defendants did not have to prove Decedent was incompetent or unable to make his own decisions in order to demonstrate Mrs. Rosenquist's authority.

{10}     Mrs. Rosenquist responded that discovery on the Agreement's enforceability was no longer necessary because—according to Plaintiff's memory—the district court was only inclined to allow discovery on the issue of procedural unconscionability, not Mrs. Rosenquist's authority to bind Decedent to the Agreement. Moreover, she argued, even if there was a conflict between the court's oral statements and the written order, the written order controls. Finally, Mrs. Rosenquist argued that the court should not reconsider its order because Defendants failed in the first instance to meet their burden to demonstrate that Mrs. Rosenquist had the authority to bind Decedent to the Agreement.

{11}     The district court set a hearing on Defendants' motion for reconsideration and took no other action on the case until the hearing six months later. At the hearing, Defendants asked whether they could conduct discovery on the Agreement's enforceability, and the court responded, "[I]f I was considering this [seven months ago], I might say yes." The court noted that Defendants did not attempt to conduct discovery even though the written order did not explicitly prohibit them from doing so. The court denied Defendants' motion and set the matter for trial. This appeal followed.

## DISCUSSION

### Standard of Review

{12}     An order granting or denying a motion to compel arbitration entered without an evidentiary hearing is similar in nature to a grant or denial of a summary judgment motion. *See DeArmond v. Halliburton Energy Servs., Inc.*, 2003-NMCA-148, ¶ 4, 134 N.M. 630, 81 P.3d 573 (noting that the district court's order compelling arbitration was similar in nature to a grant of a summary judgment motion because it held no evidentiary hearing and made no findings or conclusions). Accordingly, we "review de novo the grant [or denial] of the motion to compel arbitration in the same manner we would review a grant of a summary judgment motion[,]" viewing the record in the light

most favorable to the party opposing arbitration. *Id.* ("The district court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." (internal quotation marks and citation omitted)); *see also Peavy v. Skilled Healthcare Grp., Inc.*, 2020-NMSC-010, ¶ 9, 470 P.3d 218 ("We apply a de novo standard of review to a district court's denial of a motion to compel arbitration." (internal quotation marks and citation omitted)). "[A] motion to compel arbitration may only be granted as a matter of law when there is no genuine issue of material fact as to the existence of an agreement." *DeArmond*, 2003-NMCA-148, ¶ 4.

**Defendants Failed to Establish Mrs. Rosenquist's Agency and Authority**

{13} Defendants argue that the district court erred in denying their motion to compel arbitration because Mrs. Rosenquist had express or implied authority to sign the Agreement on behalf of Decedent in light of her actions and representations.[2] For the reasons that follow, we disagree.

{14} "When a party agrees to a non-judicial forum for dispute resolution, the party should be held to that agreement." *Barron v. Evangelical Lutheran Good Samaritan Soc.*, 2011-NMCA-094, ¶ 14, 150 N.M. 669, 265 P.3d 720 (internal quotation marks and citation omitted). However, "New Mexico courts have clearly distinguished those situations where lack of agreement by the parties renders an arbitration clause unenforceable." *Id.* ¶ 15. For this reason, "[t]he party attempting to compel arbitration carries the burden of demonstrating a valid arbitration agreement." *Corum v. Roswell Senior Living, LLC*, 2010-NMCA-105, ¶ 3, 149 N.M. 287, 248 P.3d 329. As relevant to this case, "a valid arbitration agreement signed by a competent party binds that party's estate and statutory heirs in a subsequent wrongful death action." *Estate of Krahmer ex rel. Peck v. Laurel Healthcare Providers, LLC*, 2014-NMCA-001, ¶ 1, 315 P.3d 298.

{15} Under common law principles of agency, an agent's agreement to a contract may bind the principal. "An agent is a person who, by agreement with another called the principal, represents the principal in dealings with third persons or transacts some other business, manages some affair or does some service for the principal[.]" *Tercero v. Roman Catholic Diocese of Norwich, Conn.*, 2002-NMSC-018, ¶ 12, 132 N.M. 312, 48 P.3d 50 (internal quotation marks and citation omitted). "Whether an agency exists is a

---

2Defendants also assert the district court erred in purportedly holding that: (1) the Representative Designation form's omissions negated Mrs. Rosenquist's authority, (2) Defendants were required to prove Decedent's incompetence before finding that Mrs. Rosenquist had authority to sign on his behalf, and (3) the Agreement did not bind Decedent because he was not identified in the Agreement. Additionally, despite the district court not addressing the issues in its written order, Defendants continue to assert that the Agreement was not procedurally and substantively unconscionable. Given our conclusion that Defendants failed to meet their burden to demonstrate Mrs. Rosenquist's agency and authority with evidence of Decedent's actions, we need not address these arguments. *See Sheraden v. Black*, 1988-NMCA-016, ¶ 10, 107 N.M. 76, 752 P.2d 791 ("It is well settled in New Mexico that the function of a reviewing court on appeal is to correct erroneous results, not to correct errors that, even if corrected, would not change the result.").

question of fact to be determined from the circumstances of each case." *Id.* The party asserting the existence of an agency relationship bears the burden of establishing such a relationship. *See Corona v. Corona*, 2014-NMCA-071, ¶ 22, 329 P.3d 701 (stating that a plaintiff seeking to impose liability on the principal for the acts of the agent bears the burden of demonstrating an agency relationship); *see also* Restatement (Third) Of Agency: Parties' Labeling and Popular Usage Not Controlling § 1.02 cmt. (d) (2006) ("The party asserting that a relationship of agency exists generally has the burden in litigation of establishing its existence."). In order to establish an agency relationship, the party must demonstrate "that the principal has in some manner indicated that the agent is to act for him, and that the agent so acts or agrees to act on his behalf and subject to his control." *Totah Drilling Co. v. Abraham*, 1958-NMSC-102, ¶ 19, 64 N.M. 380, 328 P.2d 1083.

**{16}**   Once an agency relationship is established, "the principal is [ordinarily] liable for the acts of his agent when acting within the scope of the agent's authority." *Stewart v. Potter*, 1940-NMSC-052, ¶ 17, 44 N.M. 460, 104 P.2d 736. The authority of an agent may be: (1) actual, in that it "is given to the agent by the principal in terms that are express, or in terms that are implied from words or conduct of the principal to the agent or from the circumstances of the relationship[]" or (2) apparent, in that it "arises from manifestations by the principal to the third party and can be created by appointing a person to a position that carries with it generally recognized duties." *Barron*, 2011-NMCA-094, ¶ 16 (internal quotation marks and citations omitted).

**{17}**   The party seeking to bind the principal by the acts of his or her agent bears the burden of proving the agent's authority. *See Snyder v. Stahlman Lumber Co.*, 1935-NMSC-057, ¶¶ 1-3, 39 N.M. 374, 47 P.2d 901 (stating that the plaintiff seeking to hold a corporate defendant to a sales contract bore the burden of establishing that the defendant's purported agent was acting within the scope of his authority when he entered into the contract); *see also* 3 Am. Jur. 2d *Agency* § 324 (2020) ("[T]he burden of proving the apparent authority of an agent is on the party seeking to bind the principal by the act or contract in controversy."); *cf. Gomez v. Jones-Wilson*, 2013-NMCA-007, ¶ 31, 294 P.3d 1269 ("[W]hen the existence of [an attorney's apparent] authority to settle is disputed, the burden falls on the party seeking enforcement of the alleged settlement agreement.").

**{18}**   Here, it is undisputed that Decedent did not sign the Agreement on his own behalf. Rather, Mrs. Rosenquist signed the Agreement. Thus, to prove a valid arbitration agreement sufficient to bind Decedent's estate, Defendants bore the burden of demonstrating that Mrs. Rosenquist had actual or apparent authority to sign the Agreement as Decedent's agent. *See Corona*, 2014-NMCA-071, ¶ 22; *Estate of Krahmer ex rel. Peck*, 2014-NMCA-001, ¶ 1. Defendants failed to present any evidence of Decedent's actions that would suggest that Mrs. Rosenquist was his agent and had actual or apparent authority to sign his admission paperwork. *See Totah Drilling Co.*, 1958-NMSC-102, ¶ 19 (stating that in order to form an agency relationship, it is necessary "that *the principal* has in some manner indicated that the agent is to act for him" (emphasis added)); *see also Tercero*, 2002-NMSC-018, ¶ 12 ("To establish

apparent authority, the relying party must base the relationship upon words or acts of the principal, and not the representations or acts of the agent." (internal quotation marks and citation omitted)).

**{19}** The only possible "action" by Decedent to which Defendants could point to meet their burden was his failure to subsequently deny that Mrs. Rosenquist had any authority to sign his admission paperwork. However, it is settled law that a principal cannot ratify a purported agent's acts through mere inaction unless the principal has full knowledge of the material facts concerning the transaction. *See See-Tee Mining Corp. v. Nat'l Sales, Inc.*, 1966-NMSC-173, ¶ 5, 76 N.M. 677, 417 P.2d 810 ("It is indispensable to ratification that the party held thereto shall have had full knowledge of all the material facts concerning the transaction."); *see also* 3 Am. Jur. 2d *Agency* § 183 (2020) ("There can be no ratification by acquiescence, silence, or failure to repudiate . . . unless the principal has full and complete knowledge of all the material facts attending the unauthorized transaction."). Defendants failed to present any evidence that Decedent knew that Mrs. Rosenquist signed his admission documents or the Agreement.

**{20}** Defendants reliance on *Barron*, 2011-NMCA-094, and *THI of N.M. at Vida Encantada, LLC v. Archuleta*, No. CIV. 11-399 LH/ACT, 2013 WL 2387752 (D.N.M. Apr. 30, 2013) (non-precedential), to support their argument that Mrs. Rosenquist had authority to sign the Agreement on his behalf is misplaced.

**{21}** In *Barron*, this Court held that the decedent's general authorization for her granddaughter to complete her nursing home admission paperwork was sufficient to give her granddaughter authority to agree to binding arbitration. 2011-NMCA-094, ¶ 1. Importantly, the decedent explicitly told an employee that her granddaughter would be filling out her admission paperwork on her behalf. *Id.* ¶ 3. Here, on the other hand, there is no evidence that Decedent told any Facility employee that Mrs. Rosenquist would be signing his admission paperwork. Thus, *Barron* is distinguishable.

**{22}** In *Archuleta*, the federal district court held that a daughter had authority to bind her mother's estate to arbitration. 2013 WL 2387752. There, the decedent did not give her daughter permission to sign any admission paperwork, she did not tell anyone that her daughter had authority to sign any admission paperwork, and she had no knowledge that her daughter signed any admission paperwork on her behalf. *Id.* at *2. The court nevertheless held that the decedent's daughter had apparent authority to sign the arbitration agreement because there was substantial evidence demonstrating that the decedent "clearly desired to be admitted to the nursing home, and she routinely allowed her daughter to sign financial paperwork on her behalf." *THI of N.M. at Vida Encantada, LLC v. Archuleta for Estate of Lucero*, No. CV 11-0399 BB/ACT, 2012 WL 13002170, at *1, *4 (D.N.M. May 10, 2012) (earlier memorandum opinion determining that the daughter had implied authority to sign admission paperwork on her mother's behalf but reserving the issue of whether this also included authority to make legal decisions pending certification of the issue to the New Mexico Supreme Court); *Archuleta*, 2013 WL 2387752, at **8-9 (citing an earlier memorandum opinion's

determination that the decedent impliedly gave her daughter authority to admit the decedent to the nursing home and holding that this also included authority to sign an arbitration agreement contained within the admission paperwork).

**{23}** Defendant's reliance on *Archuleta* is unavailing for two reasons. First, *Archuleta* is an unpublished federal district court case, which is not binding on this Court. *See In re N.M. Indirect Purchasers Microsoft Corp.*, 2007-NMCA-007, ¶ 29, 140 N.M. 879, 149 P.3d 976 (stating that "we are not bound by federal law when we interpret state law"). Second, unlike *Archuleta*, Defendants fail to point to any evidence of Decedent's desire to be admitted to the Facility or that he routinely allowed Mrs. Rosenquist to sign documents on his behalf.

**{24}** Simply put, without any evidence of Decedent's actions demonstrating that (1) Mrs. Rosenquist was his agent and had authority to sign his admission paperwork, or (2) that he ratified Mrs. Rosenquist's actions, Defendants failed to meet their burden to establish the existence of a valid arbitration agreement. Accordingly, the district court properly denied Defendants' motion to compel arbitration.

### We Decline to Remand for Further Discovery on the Agreement's Enforceability

**{25}** In a single sentence in the concluding paragraph of the brief in chief, Defendants alternatively request that we remand this matter to the district court so that they may conduct discovery on the Agreement's enforceability. In support of this request, Defendants summarily claim they were "precluded from pursuing discovery while the disputed issue of the motion to disqualify [opposing] counsel was pending."

**{26}** We recognize that "[i]t is essential that a tribunal determine whether an attorney or a law firm is disqualified from a case immediately upon being alerted to a potential conflict of interest . . . [and] the tribunal has a duty to immediately stay the proceedings to determine whether a conflict exists." *Living Cross Ambulance Serv., Inc. v. N.M. Pub. Regulation Comm'n*, 2014-NMSC-036, ¶ 22, 338 P.3d 1258. Nonetheless, Defendants fail to explain how they were, in fact, prevented from deposing Mrs. Rosenquist when the district court never stayed the proceedings and it was *opposing counsel* who had the potential conflict (in contrast with the reverse scenario where the potentially disqualified attorney seeks to depose an opposing party). *Cf. id.* ¶ 22 (holding that the Public Regulation Commission "committed reversible error when it allowed a potentially disqualified attorney to conduct a hearing over the objection of opposing counsel"). Nor do Defendants develop an argument as to how they were otherwise prevented from deposing Mrs. Rosenquist even though the district court indicated it would allow Defendants to depose Mrs. Rosenquist at the non-evidentiary hearing, and the subsequent written order did not explicitly prohibit Defendants from deposing Mrs. Rosenquist. Accordingly, we decline Defendants' request to remand for further discovery on the Agreement's enforceability. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076. ("We will not review unclear arguments, or guess at what [a party's] arguments might be.").

**CONCLUSION**

**{27}** For the foregoing reasons, we affirm.

**{28} IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**BRIANA H. ZAMORA, Judge**