# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2013-NMSC-032

Filing Date: June 27, 2013

Docket No. 33,331

NINA R. STRAUSBERG,

        Plaintiff-Respondent,

v.

LAUREL HEALTHCARE PROVIDERS, LLC,
ARBOR BROOK, LLC d/b/a ARBOR BROOK
HEALTHCARE, LISA S. NOYA BURNETT, M.D.,
and THE FOUR HUMOURS HEALTHCARE, LLC,

        Defendants-Petitioners.

**ORIGINAL PROCEEDING ON CERTIORARI**
Clay Campbell, District Judge

Keleher & McLeod, P.A.
Thomas C. Bird
Mary Moran Behm
Hari-Amrit Khalsa
Neil R. Bell
Albuquerque, NM

for Petitioners

Harvey Law Firm, LLC
Dusti D. Harvey
Jennifer J. Foote
Albuquerque, NM

for Respondent

Doerr & Knudson, P.A.
Randy J. Knudson
Portales, NM

1

Kelly Bagby
Washington, D.C.

for Amicus Curiae
AARP

**OPINION**

**VIGIL, Justice.**

**I.     INTRODUCTION**

**{1}**     In this case we address which party has the burden to prove that a contract is unconscionable and, therefore, unenforceable.  Plaintiff Nina Strausberg signed an arbitration agreement as a mandatory condition of her admission to the Arbor Brook Healthcare nursing home.  Despite having signed the arbitration agreement, Plaintiff subsequently sued Arbor Brook and several other defendants for alleged negligent care. Defendants moved the district court to compel arbitration and to dismiss Plaintiff's case.  In response, Plaintiff argued that the arbitration agreement was unconscionable.  The district court found that Plaintiff had failed to prove unconscionability and, therefore, granted Defendants' motion to compel arbitration.

**{2}**     The Court of Appeals reversed, concluding that the district court erred by putting the burden on Plaintiff to prove unconscionability.  *Strausberg v. Laurel Healthcare Providers, LLC*, 2012-NMCA-006, ¶¶ 21, 23-24, 269 P.3d 914.  The Court of Appeals held that "when a nursing home relies upon an arbitration agreement signed by a patient as a condition for admission to the nursing home, and the patient contends that the arbitration agreement is unconscionable, the nursing home has the burden of proving that the arbitration agreement is not unconscionable."  *Id.* ¶ 20.

**{3}**     We disagree and hold that Plaintiff has the burden to prove that the arbitration agreement is unconscionable because unconscionability is an affirmative defense to contract enforcement, and under settled principles of New Mexico law, the party asserting an affirmative defense has the burden of proof.  We also hold that the Court of Appeals' holding is preempted by federal law because it treats nursing home arbitration agreements differently than other contracts.  Accordingly, we reverse and remand this case to the Court of Appeals to determine whether the district court erred by granting Defendants' motion to compel arbitration.

**II.     BACKGROUND**

**{4}**     Plaintiff underwent spinal fusion surgery on April 5, 2007, at the age of forty-eight. Plaintiff required rehabilitation following surgery, and on April 11, 2007, she was admitted to the Arbor Brook nursing home in Albuquerque, New Mexico, where she resided until

2

April 23, 2007.

**{5}**     Prior to Plaintiff's transfer from the hospital to Arbor Brook, Deborah McCullough, a nurse liaison from Arbor Brook, met with Plaintiff at the hospital to evaluate Plaintiff and to facilitate Plaintiff's transfer.  One of McCullough's duties as nurse liaison was to give Arbor Brook's mandatory arbitration agreement to hospital patients and ask them to sign the agreement before they were admitted to the nursing home.  On April 10, 2007, McCullough presented the arbitration agreement to Plaintiff, and both Plaintiff and McCullough signed the agreement.  The arbitration agreement provides, in part, that:

> **[b]y signing this Arbitration Agreement, the Facility and the Resident relinquish their right to have any and all disputes associated with . . . the provision of services under the [Arbitration] Agreement (including, without limitation, class action or similar proceedings; claim for negligent care or any other claims of inadequate care provide [sic] by the Facility . . . ), resolved through a lawsuit, namely by a judge, jury or appellate court, except to the extent that New Mexico law provides for judicial action in arbitration proceedings.  This Arbitration Agreement shall not apply to either the Facility or Resident in any disputes pertaining to collections or discharge of residents.**
> **BY SIGNING THIS AGREEMENT, THE FACILITY AND THE RESIDENT UNDERSTAND THAT THEY ARE GIVING UP THEIR CONSTITUTIONAL RIGHT TO A TRIAL IN COURT BY A JUDGE OR JURY, AND THE RIGHT TO APPEAL CONCERNING ANY DISPUTES.**

**{6}**     In June 2008, over one year after her discharge from Arbor Brook, Plaintiff sued Arbor Brook, LLC, d/b/a Arbor Brook Healthcare; Laurel Healthcare Providers, LLC, as Arbor Brook's owner, operator, or manager; a doctor who has since been dismissed from the case; and The Four Humours Healthcare, LLC, the doctor's employer.  Plaintiff alleged, among other things, that negligent care at the facility caused her to suffer painful, preventable decubitus ulcers at the site of her surgical wound, a staph infection, hospitalization, and other medical complications.

**{7}**     Defendants moved the district court to dismiss Plaintiff's case and to compel arbitration, arguing that all of Plaintiff's claims arose from her residency at Arbor Brook and they are covered by the arbitration agreement.  Plaintiff responded that the district court should deny the motion to compel arbitration because the arbitration agreement is both substantively and procedurally unconscionable.  Regarding substantive unconscionability, Plaintiff argued that the terms of the agreement are unfair because the agreement covers only claims that would be brought by the resident, but it excludes the claims that would be initiated by the nursing home.  Plaintiff asserted that the arbitration agreement is also procedurally unconscionable due to the facts and circumstances surrounding the contract's formation, including that Plaintiff had limited time to review the agreement before signing

3

it and that she was under the influence of pain medication when she signed the agreement. Additionally, Plaintiff contended that the arbitration agreement is invalid because it is illusory and lacked consideration and mutuality of obligation. Finally, Plaintiff argued that McCullough lacked authority to enter into the contract on behalf of Defendants.

**{8}**     At a hearing on September 2, 2008, the district court found that all of Plaintiff's arguments lacked merit except for Plaintiff's procedural unconscionability claim. The district court explained that it could not evaluate procedural unconscionability without holding an evidentiary hearing. Thus, on October 28, 2008, the district court held an evidentiary hearing on procedural unconscionability during which Plaintiff and McCullouch testified.

**{9}**     On November 4, 2008, the district court issued a letter decision, concluding that the arbitration agreement is not procedurally unconscionable and outlining the court's reasoning. The district court noted that Plaintiff's testimony at the hearing demonstrated her confusion regarding the circumstances surrounding the signing of the arbitration agreement. Plaintiff testified that a male presented the agreement to her at Arbor Brook on April 11, 2007, after her discharge from the hospital, along with nearly forty pages of admission paperwork. Plaintiff testified that the paperwork was not explained to her, that she was given ten minutes to review and sign the paperwork, that she did not have her reading glasses with her, and that she felt "sleepy . . . groggy . . . [and] in a fog."

**{10}**     The district court found that, contrary to her testimony, Plaintiff had signed the arbitration agreement when McCullough presented it to her at the hospital on April 10, 2007, the day before Plaintiff was transferred to the nursing home. The district court observed that Plaintiff did not testify about how she felt on April 10, 2007, the day she actually signed the agreement. However, based on Plaintiff's medical records from April 10, 2007, the district court found that Plaintiff's confusion could be attributed to the pain medication she had taken that day, which included at least two doses of Percocet.

**{11}**     McCullough, Defendants' only witness, testified that she had no recollection of either Plaintiff or the arbitration agreement that she and Plaintiff had signed on April 10, 2007. The district court found that McCullough's inability to recall Plaintiff was caused by the large number of patients with whom McCullough interacted in her capacity as nurse liaison. McCullough testified about her usual practice in obtaining signatures on arbitration agreements and explained that each patient was required to sign the agreement as a precondition to nursing home admission.

**{12}**     In considering whether the evidence at the hearing demonstrated procedural unconscionability, the district court relied on *Fiser v. Dell Computer Corp.*, 2008-NMSC-046, 144 N.M. 464, 188 P.3d 1215, and *Guthmann v. La Vida Llena*, 103 N.M. 506, 709 P.2d 675 (1985), *overruled in part by Cordova v. World Finance Corp. of N.M.*, 2009-NMSC-021, ¶ 31, 146 N.M. 256, 208 P.3d 901. The district court found that the

considerations referenced in *Fiser* and *Guthmann* were evenly balanced in this case, with some factors weighing in favor of contract enforcement and some weighing against it.

**{13}** One factor weighing against enforcement was Defendants' bargaining position, which the district court found to be vastly superior to Plaintiff's because Arbor Brook drafted the form arbitration agreement and offered it to Plaintiff as a precondition of nursing home admission on a take-it-or-leave-it basis. Additionally, the district court expressed concern regarding Defendants' tactic of obtaining contract signatures from patients who are hospitalized and medicated. Finally, the district court noted that "Plaintiff believed that her only option was to be discharged from the hospital to Defendant's care, but did not testify whether she looked into other placement options."

**{14}** Ultimately, however, the district court found that Plaintiff's understanding of the arbitration agreement was the controlling factor and weighed in favor of contract enforcement. In response to questioning from the district court, Plaintiff admitted at the hearing that, despite the medication and regardless of which day she signed the agreement, she understood when she signed the arbitration agreement that it significantly limited her right to seek recourse in the court system. The district court noted that Plaintiff is highly educated, even though her high level of education was somewhat nullified by her medicated state. The district court explained that "it was Plaintiff's burden to establish the contract she signed is unenforceable," and the court found that Plaintiff had failed to meet that burden. Thus, the district court concluded that the arbitration agreement is not procedurally unconscionable.

**{15}** On December 2, 2008, the district court entered an order finding that the arbitration agreement was enforceable and granting Defendants' motion to dismiss and to compel arbitration. The order did not include any findings of fact or explanation regarding the district court's ruling that Plaintiff's other arguments, including her substantive unconscionability argument, lacked merit.

**{16}** Plaintiff appealed to the Court of Appeals, arguing that a combination of substantive and procedural unconscionability rendered the arbitration agreement unconscionable. The Court of Appeals asked the parties to file supplemental briefs addressing which party has the burden to prove unconscionability. The parties submitted supplemental briefs as directed. Following the parties' submission of supplemental briefs addressing the burden of proof, the Court of Appeals' majority opinion reversed the district court, although there was a dissenting opinion. *See Strausberg*, 2012-NMCA-006, ¶¶ 24, 26-33.

**{17}** The Court of Appeals' majority held that "when a nursing home relies upon an arbitration agreement signed by a patient as a condition for admission to the nursing home, and the patient contends that the arbitration agreement is unconscionable, the nursing home has the burden of proving that the arbitration agreement is not unconscionable." *Id.* ¶ 20. The majority further concluded that the district court committed reversible error by

"shift[ing] the burden to Plaintiff to prove that the arbitration agreement is not unconscionable." *Id.* ¶ 21.

**{18}** In reaching its holding, the majority opinion relied primarily on the contract law principle that "[t]he party who seeks to compel arbitration has the burden of proof to establish the existence of a valid agreement to arbitrate." *Id.* ¶ 15. The majority also discussed a case from the West Virginia Supreme Court of Appeals, *Brown ex rel. Brown v. Genesis Healthcare Corp.*, 724 S.E.2d 250 (W. Va. 2011), which has since been reversed by the United States Supreme Court, *Marmet Health Care Center, Inc. v. Brown*, 565 U.S. ___, ___, 132 S. Ct. 1201, 1204 (2012). *See Strausberg*, 2012-NMCA-006, ¶ 19. In *Genesis Healthcare*, the West Virginia Supreme Court of Appeals held in part that "as a matter of public policy under West Virginia law, an arbitration clause in a nursing home admission agreement adopted prior to an occurrence of negligence that results in a personal injury or wrongful death, shall not be enforced to compel arbitration of a dispute concerning the negligence." 724 S.E.2d at 292. Although our Court of Appeals declined to adopt the holding of *Genesis Healthcare*, the majority found compelling the West Virginia court's declaration in *Genesis Healthcare* that the realities of nursing home admission render unconscionable "all mandatory arbitration clauses in nursing home admission agreements." *Strausberg*, 2012-NMCA-006, ¶ 19.

**{19}** The Court of Appeals' majority acknowledged that most courts considering the issue of unconscionability have placed "the burden on the party seeking to set aside an arbitration agreement." *Id.* ¶ 17 & n.1 (citing cases from four United States circuit courts). However, the majority concluded that such cases are distinguishable from this case and are unpersuasive because those cases dealt with commercial transactions. *Id.* ¶¶ 17-18. The majority opined that a nursing home admission contract "is not a mere commercial transaction" and that mandatory nursing home arbitration agreements should be treated differently than other contracts because nursing home agreements are presented to individuals when they are "at their most vulnerable, emotionally or physically, or both." *Id.* ¶ 18.

**{20}** Thus, the Court of Appeals reversed the district court and remanded Plaintiff's case for the district court to reconsider whether the arbitration agreement is unconscionable, *id.* ¶ 24, explaining that the Court of Appeals had "no way of assessing . . . whether the district court would have come to the same conclusion" regarding enforcement of the arbitration agreement "if the burden of proof had been properly allocated to Defendants." *Id.* ¶¶ 22, 24. The Court of Appeals also noted that the district court did not have the benefit of this Court's recent opinion in *Rivera v. American General Financial Services, Inc.*, 2011-NMSC-033, ¶¶ 39-48, 150 N.M. 398, 259 P.3d 803 (discussing New Mexico's unconscionability doctrine). *Strausberg*, 2012-NMCA-006, ¶ 22.

**{21}** Judge Wechsler filed a dissenting opinion, concluding that "the district court did not err in determining that Plaintiff had the burden to prove that the arbitration agreement was unconscionable." *Id.* ¶ 33 (Wechsler, J., dissenting). The dissent agreed with the majority

6

that "[t]he party who seeks to compel arbitration has the burden of proof to establish the existence of a valid agreement to arbitrat[e]." *Id.* ¶ 27 (first alteration in original) (internal quotation marks and citation omitted) (Wechsler, J., dissenting). However, the dissent explains, once the party seeking to compel arbitration has shown the existence of a valid agreement, established principles of New Mexico contract law dictate that the "party seeking to set aside enforcement of [the] contract based on a defense or exception, such as unconscionability, has the burden of proof." *Id.* ¶ 28 (Wechsler, J., dissenting).

**{22}** Following the Court of Appeals' reversal of the district court, Defendants petitioned this Court for certiorari, arguing that (1) the Court of Appeals' opinion is contrary to the precedents of this Court, which establish that a party raising an affirmative defense to the enforcement of a contract bears the burden of proof; (2) the Court of Appeals' holding is preempted by the Federal Arbitration Act; and (3) the Court of Appeals' opinion violates the separation of powers doctrine by intruding on the policy-making authority of the Legislature. Plaintiff did not file a cross-petition for certiorari, but Plaintiff urges this Court in her answer brief either to uphold the Court of Appeals' opinion or to reach the merits of her substantive unconscionability challenge and hold that the arbitration agreement is substantively unconscionable and, therefore, unenforceable.

**{23}** We conclude that the Court of Appeals' majority opinion is contrary to established principles of New Mexico contract law and the Federal Arbitration Act's mandate that arbitration agreements must be treated the same as other contracts. Accordingly, we do not address the constitutional separation of powers issue that was raised by Defendants. We also decline to reach the merits of Plaintiff's substantive unconscionability challenge, and we remand this case to the Court of Appeals to review whether the district court erred by dismissing Plaintiff's case.

## III.   DISCUSSION

**{24}** We granted certiorari to address which party has the burden of proof on the issue of unconscionability. As a preliminary matter, we recognize that the term "burden of proof" has been used to describe two distinct concepts: (1) the burden of persuasion, i.e., the burden to persuade the factfinder; and (2) the burden of production, i.e., the burden to produce evidence. *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005); *see Duke City Lumber Co. v. N.M. Envtl. Improv. Bd.*, 95 N.M. 401, 402-03, 622 P.2d 709, 710-11 (Ct. App. 1980) (noting that the term "burden of proof" describes these two distinct concepts). In this opinion, we use the terms "burden of persuasion" and "burden of proof" interchangeably; both terms refer to the party who must persuade the factfinder in order to prevail. *See Microsoft Corp. v. i4i Ltd. P'ship*, ___ U.S. ___, ___ n.4, 131 S. Ct. 2238, 2245 n.4 (2011).

### A.   STANDARD OF REVIEW

7

**{25}** Whether the district court correctly allocated the burden of proof is a question of law that this Court reviews de novo. *See State v. Torres*, 1999-NMSC-010, ¶ 28, 127 N.M. 20, 976 P.2d 20 ("[W]hether the trial court applied the correct evidentiary rule or standard is subject to de novo review on appeal."). We also interpret statutes, including the New Mexico Uniform Arbitration Act and the Federal Arbitration Act, de novo. *See Martinez v. N.M. Dep't of Transp.*, 2013-NMSC-005, ¶ 10, 296 P.3d 468 ("[S]tatutory construction is a matter of law which is our responsibility to review de novo.").

## B. APPLICABLE LAW

**{26}** "New Mexico respects party autonomy; the law to be applied to a particular dispute may be chosen by the parties through a contractual choice-of-law provision." *Fiser*, 2008-NMSC-046, ¶ 7. The arbitration agreement in this case states that its enforcement shall be governed by New Mexico law, including the Uniform Arbitration Act (UAA), NMSA 1978, §§ 44-7A-1 to -32 (2001), and any applicable federal laws.

**{27}** Defendants assert that, in addition to New Mexico law, the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16 (2006), applies to the arbitration agreement in this case. Section 2 of the FAA states that the act applies to any arbitration agreement within a "contract evidencing a transaction involving commerce." The United States Supreme Court has construed the FAA's "involving commerce" requirement broadly to include a wide range of economic and transactional activity. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (noting that the FAA "provides for the enforcement of arbitration agreements within the full reach of the Commerce Clause" (internal quotation marks and citation omitted)). Thus, the FAA applies to arbitration agreements "in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice . . . subject to federal control." *Id.* at 56-57 (internal quotation marks and citation omitted).

**{28}** Plaintiff does not dispute that the FAA applies or that the arbitration agreement involves commerce. She notes that the contractual relationship between a resident and Arbor Brook obligates the resident to pay for care on a per-day basis. Further, Plaintiff and amicus curiae AARP assert in their briefing to this Court that nursing facilities in New Mexico are subject to an array of federal laws, including Medicare and Medicaid standards and regulations. For example, AARP explains that "New Mexico nursing facilities are subject to the Federal Nursing Home Reform Amendments (FNHRA) and implementing regulations, which set forth minimum nationwide standards of care for any nursing facility that accepts Medicare or Medicaid reimbursement (and virtually all accept one, the other, or both)." Arbor Brook is no exception, and in fact, Plaintiff alleged in her complaint that Defendants violated Medicaid statutes and regulations.

**{29}** Given that the arbitration agreement at issue indisputably involves commerce and that Arbor Brook is subject to federal regulation and control, we conclude that the FAA applies to the arbitration agreement Plaintiff signed as a mandatory condition of nursing

home admission. *See Marmet Health Care Ctr.*, ___ U.S. at ___, 132 S. Ct. at 1202 (applying the FAA to several nursing home arbitration agreements); *see also Briarcliff Nursing Home, Inc. v. Turcotte*, 894 So. 2d 661, 667-68 (Ala. 2004) (per curiam) (concluding that a nursing home admission contract "substantially affects interstate commerce"); *Triad Health Mgmt. of Ga., III, LLC v. Johnson*, 679 S.E.2d 785, 787-88 (Ga. Ct. App. 2009) (explaining why the FAA applied admission contract to a nursing home); *Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 589-90 (Ky. 2012) (noting that healthcare involves interstate commerce); *Miller v. Cotter*, 863 N.E.2d 537, 544 (Mass. 2007) (explaining that Congress's commerce power is broad and encompasses healthcare).

**{30}** Accordingly, in considering which party has the burden to prove unconscionability, this Court will consider general principles of New Mexico contract law, the UAA, the FAA, and United States Supreme Court precedent interpreting the FAA. *See Perry v. Thomas*, 482 U.S. 483, 489 (1987) (explaining that the FAA creates a "body of federal substantive law of arbitrability" that "is enforceable in both state and federal courts").

## C. NEW MEXICO'S UNCONSCIONABILITY DOCTRINE

**{31}** We start with a discussion of New Mexico's unconscionability doctrine, noting that both New Mexico law and federal law require courts to apply generally applicable principles of contract law to arbitration agreements. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686 (1996) ("States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause upon such grounds as exist at law or in equity for the revocation of any contract." (emphasis, internal quotation marks, and citation omitted)); *Horne v. Los Alamos Nat'l Sec., L.L.C.*, 2013-NMSC-004, ¶ 16, 296 P.3d 478 ("[A]rbitration agreements are contracts enforceable by the rules of contract law."). Following the district court's dismissal of Plaintiff's case, this Court issued two opinions discussing unconscionability, *Rivera*, 2011-NMSC-033, and *Cordova*, 2009-NMSC-021. These precedents explain that "'[u]nconscionability is an equitable doctrine, rooted in public policy, which allows courts to render unenforceable an agreement that is unreasonably favorable to one party while precluding a meaningful choice of the other party.'" *Rivera*, 2011-NMSC-033, ¶ 43 (quoting *Cordova*, 2009-NMSC-021, ¶ 21).

**{32}** A New Mexico court may find that a contract or contractual term is unenforceable if the contract or term is procedurally unconscionable, substantively unconscionable, or a combination of both. *See Cordova*, 2009-NMSC-021, ¶¶ 21, 24. "While there is a greater likelihood of a contract's being invalidated for unconscionability if there is a combination of both procedural and substantive unconscionability, there is no absolute requirement in our law that both must be present to the same degree or that they both be present at all." *Id.* ¶¶ 24, 32-33 (holding that the contract at issue was so substantively unconscionable that an analysis of procedural unconscionability was unnecessary); *see also Rivera*, 2011-NMSC-033, ¶ 54 ("As in *Cordova*, the arbitration provisions in this case are so substantively unconscionable that we need not consider whether the provisions are also procedurally unconscionable.").

9

**{33}** To analyze whether a contract is substantively unconscionable, the court looks to the terms of the contract itself and considers whether the terms of the agreement are commercially reasonable, fair, and consistent with public policy. *See Rivera*, 2011-NMSC-033, ¶ 45. For example, "[c]ontract provisions that unreasonably benefit one party over another are substantively unconscionable." *Cordova*, 2009-NMSC-021, ¶ 25. In *Cordova*, this Court clarified that New Mexico contract law defines a substantively unconscionable contract provision as one that "is grossly unreasonable and against our public policy under the circumstances," *id.* ¶ 31, and we overruled *Guthmann*, 103 N.M. at 511, 709 P.2d at 680, to the extent that *Guthmann* required the party asserting substantive unconscionability to demonstrate that the contract is one "such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Cordova,* 2009-NMSC-021, ¶ 31 (internal quotation marks and citations omitted).

**{34}** Applying these principles, this Court held in *Rivera* and *Cordova* that the contract at issue in each case was substantively unconscionable because the terms were one-sided and unreasonably benefitted one party over the other. *See Rivera*, 2011-NMSC-033, ¶¶ 53-54 (holding that an arbitration agreement in a title loan contract was substantively unconscionable because the lender "unilaterally chose the forum in which it wanted to resolve its disputes . . . while extinguishing [the borrower's] right to access the courts for any reason"); *Cordova*, 2009-NMSC-021, ¶¶ 26-27, 32 (holding that an arbitration agreement in a small loan contract was substantively unconscionable because the lender reserved non-arbitration remedies exclusively to itself while requiring the borrower to arbitrate all claims).

**{35}** To evaluate whether a contractual provision is procedurally unconscionable, a court considers the "factual circumstances surrounding the formation of the contract, including the relative bargaining strength, sophistication of the parties, and the extent to which either party felt free to accept or decline terms demanded by the other." *Id.* ¶ 23. A court evaluating procedural unconscionability should consider whether the agreement is a contract of adhesion, i.e., a "standardized contract offered by a transacting party with superior bargaining strength to a weaker party on a take-it-or-leave-it basis, without opportunity for bargaining." *Rivera*, 2011-NMSC-033, ¶ 44 (internal quotation marks and citation omitted). "[A]n adhesion contract is procedurally unconscionable and unenforceable when the terms are patently unfair to the weaker party." *Id.* (internal quotation marks and citation omitted).

**D. UNCONSCIONABILITY IS AN AFFIRMATIVE CONTRACT DEFENSE THAT MUST BE PROVEN BY ITS PROPONENT**

**{36}** We now address three principles of New Mexico law which, considered together, demonstrate that Plaintiff has the burden to prove unconscionability. First, as a general rule, the party alleging an affirmative defense has the burden of proof. *See Ortiz v. Overland Express*, 2010-NMSC-021, ¶ 30, 148 N.M. 405, 237 P.3d 707; *see also Tafoya v. Seay Bros. Corp.*, 119 N.M. 350, 352, 890 P.2d 803, 805 (1995) ("The party alleging an affirmative defense has the burden of persuasion."); *J.A. Silversmith, Inc. v. Marchiondo*, 75 N.M. 290,

294, 404 P.2d 122, 124 (1965) (noting that "it is well settled that the party" asserting an affirmative defense has the burden of proof).

**{37}** Second, New Mexico courts apply this general rule to affirmative contract defenses. *See, e.g.*, *Pucci Distrib. Co. v. Nellos*, 110 N.M. 374, 376, 796 P.2d 595, 597 (1990) (explaining that the party seeking to preclude contract enforcement based on illegality, an affirmative defense, bore the burden of proving illegality at trial); *Hickey v. Griggs*, 106 N.M. 27, 29, 738 P.2d 899, 902 (1987) ("Mitigation of damages is an affirmative defense and its burden of proof is on the defaulting party."); *Mason v. Salomon*, 62 N.M. 425, 429, 311 P.2d 652, 654 (1957) ("[T]he burden is upon the party alleging fraud to establish its existence.").

**{38}** Third, New Mexico contract law treats unconscionability as an affirmative contract defense, i.e., an equitable exception to the rule that a contract should be enforced according to its terms. *See Rivera*, 2011-NMSC-033, ¶ 17 ("Agreements to arbitrate may . . . be invalidated by generally applicable contract defenses, such as . . . unconscionability." (internal quotation marks and citation omitted)); *see also State ex rel. State Highway & Transp. Dep't v. Garley*, 111 N.M. 383, 389-91, 806 P.2d 32, 38-40 (1991) (discussing unconscionability as one "exception" to the general principle that parties are bound by the terms of a written contract with plain, unequivocal terms); *Fid. Nat'l Bank v. Tommy L. Goff, Inc.*, 92 N.M. 106, 107, 583 P.2d 470, 471 (1978) (referring to the "affirmative defense" of unconscionability); *Montano v. N.M. Real Estate Appraiser's Bd.*, 2009-NMCA-009, ¶ 12, 145 N.M. 494, 200 P.3d 544 ("We will allow equity to interfere with enforcing clear contractual obligations only when well-defined equitable exceptions, such as unconscionability, mistake, fraud, or illegality justify deviation from the parties' contract." (internal quotation marks and citation omitted)).

**{39}** Thus, we conclude that Plaintiff, the party alleging unconscionability in this case, bears the burden of proof because unconscionability is an affirmative contract defense, and under settled principles of New Mexico contract law, the party alleging an affirmative contract defense has the burden to prove that the contract is unenforceable on that basis.

**{40}** Other jurisdictions likewise place the burden of proving affirmative defenses to contract enforcement, including unconscionability, on the party seeking to set aside a contract. *See, e.g.*, *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 282 P.3d 1217, 1224-25 (Cal. 2012) ("The party seeking arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense, such as unconscionability."); *Norwest Fin. Miss., Inc. v. McDonald*, 905 So. 2d 1187, 1193 (Miss. 2005) ("The party resisting arbitration must shoulder the burden of proving a defense to arbitration."); *Tillman v. Commercial Credit Loans, Inc.*, 655 S.E.2d 362, 369 (N.C. 2008) ("[U]nconscionability is an affirmative defense, and the party asserting it has the burden of proof."). Courts have applied this contract law principle in cases involving nursing home arbitration agreements. *See, e.g.*, *Briarcliff Nursing Home*, 894 So. 2d at 665 ("The burden of proving unconscionability of an arbitration agreement

11

rests with the party challenging the agreement." (internal quotation marks and citations omitted)); *Hayes v. Oakridge Home*, 908 N.E.2d 408, 412 (Ohio 2009) ("The party asserting unconscionability of a contract bears the burden of proving that the agreement is . . . unconscionable.").

**{41}**     Plaintiff has not cited, nor has this Court found, a case from any jurisdiction holding that the party seeking contract enforcement has the burden to prove the absence of unconscionability.  In fact, even *Genesis Healthcare*, on which the Court of Appeals' majority relied, states that "[t]he burden of proving that a contract term is unconscionable rests with the party attacking the contract."  724 S.E.2d at 284, *vacated by Marmet Health Care Ctr.*, 565 U.S. at ___, 132 S. Ct. at 1204.

**{42}**     By holding that the party seeking to compel arbitration has the burden to prove the absence of unconscionability, the Court of Appeals' majority conflated the elements required for the formation of a valid contract with the affirmative defense of unconscionability.  We agree with the Court of Appeals, *see Strausberg*, 2012-NMCA-006, ¶ 15, that the party seeking to compel arbitration bears the initial burden to prove that a valid contract exists. *See Cunningham v. Springer*, 13 N.M. 259, 285, 82 P. 232, 237-38 (1905) (recognizing that the plaintiffs carried the burden to establish the existence of a contract and the terms to be enforced under it), *aff'd*, 204 U.S. 647 (1907); *see also Farmington Police Officers Ass'n Commc'n Workers of Am. Local 7911 v. City of Farmington*, 2006-NMCA-077, ¶ 16, 139 N.M. 750, 137 P.3d 1204 ("A party seeking judicial enforcement of a contract bears the burden of persuasion.").  To prove the formation of a valid contract under New Mexico law, the party seeking enforcement generally must show that the contract is "factually supported by an offer, an acceptance, consideration, and mutual assent." *Garcia v. Middle Rio Grande Conservancy Dist.*, 1996-NMSC-029, ¶ 9, 121 N.M. 728, 918 P.2d 7 (internal quotation marks and citation omitted).

**{43}**     However, once the party who seeks to compel arbitration has satisfied the initial burden of proving the formation of a valid contract, our analysis diverges from that of the Court of Appeals, in that the burden shifts to the party opposing arbitration to demonstrate that an affirmative defense, such as unconscionability, renders the contract unenforceable. *See Newcum v. Lawson*, 101 N.M. 448, 454, 684 P.2d 534, 540 (Ct. App. 1984) ("The general rule in contract actions is that the burden of proof is on the party seeking to prove the existence of a fact.").  In this case, Plaintiff does not argue that any of the elements required for valid contract formation are lacking, but instead argues that the district court should not enforce the contract because it is unconscionable.  Thus, Plaintiff carries the burden to prove her position that the arbitration agreement should not be enforced because it is unconscionable.

**{44}**     Plaintiff's arguments do not convince us to disregard these well-settled principles of contract law and put the cart before the horse.  First, Plaintiff argues that Defendants cannot demonstrate the existence of a valid contract without first proving the absence of unconscionability because unconscionability renders a contract void, and "a void contract

12

is a nullity and has no effect." For support, Plaintiff relies on precedents of this Court, which state that unfair contract terms may render a contract "'void as unconscionable.'" *Rivera*, 2011-NMSC-033, ¶ 46 (quoting *Cordova*, 2009-NMSC-021, ¶ 1). However, our precedents make clear that an unconscionable contract or contract term does not render the contract null and void immediately upon formation. Instead, if a court decides that a contract or contract term is unconscionable, the court must determine what remedy is warranted under the circumstances. As this Court has explained,

> If a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result.

*Padilla v. State Farm Mut. Auto. Ins. Co.*, 2003-NMSC-011, ¶ 15, 133 N.M. 661, 68 P.3d 901 (internal quotation marks and citations omitted); *see also Cordova*, 2009-NMSC-021, ¶ 39 ("There are two possible remedial actions we can take to give effect to our holding that the one-sided arbitration provisions separately attached to the loan agreements are unenforceable: We can strike the arbitration provisions in their entirety, or we can attempt to refashion parts of them into a fair and balanced arbitration arrangement."). A showing of unconscionability may render an otherwise valid contract voidable, revocable, and unenforceable, but this does not mean that the contract was void from its inception. *See Cordova*, 2009-NMSC-021, ¶ 21 (explaining that unconscionability may render a contract unenforceable); *Fiser*, 2008-NMSC-046, ¶ 23 (noting that unconscionability is grounds for the revocation of any contract); *cf. Curtis v. Curtis*, 56 N.M. 695, 702-05, 248 P.2d 683, 688-89 (1952) (discussing the circumstances under which fraud will render a contract void from the beginning, as opposed to the circumstances under which fraud will render a contract voidable upon the successful assertion of fraud as a defense). Thus, we conclude that the burden to prove the formation of a valid contract does not include the burden to prove the absence of unconscionability.

**{45}** Next, anticipating our holding that the proponent of an affirmative defense bears the burden of proof, Plaintiff argues that Defendants' motion to compel arbitration is itself an affirmative defense to Plaintiff's lawsuit and, accordingly, that Defendants bear the burden of proof. However, as this Court has explained, "a motion to compel arbitration is essentially a suit for specific performance," not an affirmative defense. *McMillan v. Allstate Indem. Co.*, 2004-NMSC-002, ¶ 10, 135 N.M. 17, 84 P.3d 65 (internal quotation marks and citation omitted). In addition, as we explained above, although Defendants bear the initial burden to prove the formation of a valid arbitration agreement, Plaintiff bears the burden to prove any defense to enforcement.

**{46}** In the alternative, Plaintiff urges this Court to take the relative bargaining strength of the parties into account for purposes of determining which party has the burden to prove unconscionability. This we will not do. We disagree that the burden to prove an affirmative

13

contract defense should depend upon the relative bargaining strength of the parties, but we note that consideration of the parties' relative bargaining strength is built into the doctrine of unconscionability itself. *See Rivera*, 2011-NMSC-033, ¶ 44 (explaining that the relative bargaining strength of the parties is one factor for the court to consider when deciding whether a contract is procedurally unconscionable). In this case, the district court properly considered the relative bargaining strength of the parties and concluded that Defendants' bargaining position was vastly superior to Plaintiff's. Although the parties' relative bargaining strength is a factor in the unconscionability analysis, it cannot function to shift the burden of proof.

**{47}** Finally, Plaintiff invites this Court to consider whether a fiduciary relationship exists between Plaintiff and Defendants, and if so, whether that fiduciary relationship might justify a special rule for allocating the burden of proof. Plaintiff cites no New Mexico law to support her argument, relying instead on cases from other jurisdictions and asserting that "courts have explored the possibility of a fiduciary relationship existing" in the nursing home context. Plaintiff admits that she has not preserved her argument regarding any fiduciary relationship and did not claim a breach of fiduciary duty in her complaint. *See* Rule 12-216(A) NMRA ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked . . . ."). We conclude that Plaintiff's fiduciary relationship argument is not properly before this Court, and we decline to address it.

**{48}** Finding none of Plaintiff's arguments persuasive, we conclude that unconscionability is an affirmative defense to contract enforcement and that the party asserting unconscionability bears the burden to prove that a contract should not be enforced on that basis. Accordingly, we hold that Plaintiff has the burden to prove that the arbitration agreement is unconscionable.

## E. THIS COURT'S HOLDING IS CONSISTENT WITH THE FAA AND THE UAA

**{49}** This Court's holding, that Plaintiff has the burden to prove unconscionability, is not only dictated by settled principles of New Mexico law, but it is also consistent with both the FAA and the UAA, which require a court to enforce a valid arbitration agreement unless the agreement is revocable under established principles of contract law. *See* 9 U.S.C. § 2 ("A written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."); Section 44-7A-7(a) ("An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract."). Thus, a court may, consistent with the FAA and UAA, invalidate an arbitration agreement through the application of an existing common law contract defense such as unconscionability. *See Rivera*, 2011-NMSC-033, ¶ 17 (noting that arbitration agreements

14

may "'be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability'" (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. ___, ___, 130 S. Ct. 2772, 2776 (2010))).

**{50}** Unlike this Court's holding, which rests on generally applicable principles of contract law, the Court of Appeals created a rule in this case that applies only to nursing home arbitration agreements. *See Strausberg*, 2012-NMCA-006, ¶ 20 ("[W]hen a nursing home relies upon an arbitration agreement signed by a patient as a condition for admission to the nursing home, and the patient contends that the arbitration agreement is unconscionable, the nursing home has the burden of proving that the arbitration agreement is not unconscionable.").

**{51}** Defendants argue that the rule espoused by the Court of Appeals in this case is preempted by the FAA. We agree. "Congress enacted the FAA to counteract judicial hostility to arbitration" and to ensure that states place arbitration agreements on equal footing with other contracts. *Fiser*, 2008-NMSC-046, ¶ 23; *see Doctor's Assocs.*, 517 U.S. at 682 ("Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed upon the same footing as other contracts."). Thus, the FAA preempts state law "'to the extent that it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Rivera*, 2011-NMSC-033, ¶ 17 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 477 (1989)); *see* U.S. Const. art. VI, cl. 2 (supremacy clause); *see generally N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995) (explaining that federal law may preempt state law when there is "a conflict between federal and state law"). Specifically, the FAA preempts any state law that "prohibits outright the arbitration of a particular type of claim." *AT&T Mobility LLC v. Concepcion*, 563 U.S. ___, ____, 131 S. Ct. 1740, 1747 (2011). Additionally, the FAA preempts any "state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue" because such a principle directly conflicts with the FAA. *Doctor's Assocs.*, 517 U.S. at 685.

**{52}** Congress did not, however, intend the FAA to entirely displace state law governing contract formation and enforcement. *See Volt Info. Scis.*, 489 U.S. at 477 ("The FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration."). Courts may invalidate arbitration agreements through the application of " 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' " without violating the FAA. *See Rent-A-Center*, 561 U.S. at ___, 130 S. Ct. at 2776 (quoting *Doctor's Assocs.*, 517 U.S. at 687); *see also Concepcion*, 563 U.S. at ___, 131 S. Ct. at 1748 (explaining that Section 2 of the FAA "preserves generally applicable contract defenses"). However, state courts cannot refuse to enforce arbitration agreements through the application of " 'defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.' " *Rivera*, 2011-NMSC-033, ¶ 17 (quoting *Concepcion*, 563 U.S. at ____, 131 S. Ct. at 1746). As this Court has recognized, New Mexico's common law of contracts applies to arbitration agreements

only if " 'that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.' " *Rivera*, 2011-NMSC-033, ¶ 17 (quoting *Perry*, 482 U.S. at 492-93 n.9).

**{53}** We conclude that the rule announced by the Court of Appeals in this case is preempted by the FAA because the rule singles out arbitration agreements for special treatment, thereby failing to "place arbitration agreements on an equal footing with other contracts." *Rivera*, 2011-NMSC-033, ¶ 16 (internal quotation marks and citation omitted); *cf. Cordova*, 2009-NMSC-021, ¶¶ 37-38 (explaining that New Mexico's generally applicable unconscionability analysis is not preempted by the FAA because it "is applied in the same manner to arbitration clauses as to any other clauses of a contract"); *Fiser*, 2008-NMSC-046, ¶ 23 (explaining that the FAA does not preempt a rule that rests on generally applicable grounds for the revocation of any contract).

**{54}** Our conclusion is reinforced by the United States Supreme Court's reversal of *Genesis Healthcare*, the West Virginia Supreme Court of Appeals' opinion upon which our Court of Appeals relied. In *Marmet Health Care Center*, the Supreme Court vacated the decision of the West Virginia court because it had created "a categorical rule prohibiting arbitration of a particular type of claim, and that rule is contrary to the terms and coverage of the FAA." 565 U.S. at ___, 132 S. Ct. at 1203-04. The Supreme Court remanded the case to the West Virginia Supreme Court of Appeals to consider whether the arbitration agreements at issue were enforceable under state common law principles that are "not specific to arbitration." *Id.* at ___, 132 S. Ct. at 1204.

**{55}** Plaintiff and AARP contend that the FAA does not preempt the rule announced by the Court of Appeals' majority because, unlike *Genesis Healthcare*, the Court of Appeals' opinion does not categorically prohibit nursing home arbitration agreements. However, as we have explained, the FAA preempts not only state laws that prohibit arbitration outright, but also state laws that stand "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Rivera*, 2011-NMSC-033, ¶ 17 (internal quotation marks and citation omitted). In this case, the Court of Appeals created a presumption that all nursing home arbitration agreements are unconscionable, in clear violation of the FAA's mandate that an arbitration agreement must be treated the same as any other contract. Accordingly, we hold that the rule announced by the Court of Appeals' majority is preempted by the FAA.

**F.    WE DECLINE TO CONSIDER THE MERITS OF PLAINTIFF'S UNCONSCIONABILITY DEFENSE**

**{56}** Plaintiff invites this Court to decide the merits of her substantive unconscionability defense and hold that the arbitration agreement at issue is substantively unconscionable. Plaintiff argues that the arbitration agreement is substantively unconscionable because it requires arbitration of the types of claims that the resident might bring against the nursing home while reserving to the nursing home the ability to litigate collections actions, the only

claims that a nursing home is likely to bring against a resident. Plaintiff contends that, like the arbitration agreements at issue in *Rivera* and *Cordova*, the arbitration agreement in this case is so one-sided and substantively unconscionable that this Court should declare it unenforceable and it need not consider whether the arbitration agreement is also procedurally unconscionable. Plaintiff also asserts that her claim of unconscionability presents an issue of substantial public interest because at least seven cases involving similar or identical arbitration agreements are pending before the Court of Appeals.

**{57}** Defendants argue that this Court should decline to reach the merits of Plaintiff's defense without first obtaining the benefit of an opinion from the Court of Appeals. Defendants also contend that it would be unfair for this Court to decide whether the arbitration agreement is substantively unconscionable without allowing participation and briefing from any parties litigating similar or identical arbitration agreements in the Court of Appeals. Finally, Defendants note that Plaintiff did not submit either a petition for writ of certiorari or a conditional cross-petition under Rule 12-502(F) NMRA asking this Court to address the merits of her substantive unconscionability defense.

**{58}** In light of these concerns, we agree with Defendants that the merits of Plaintiff's unconscionability defense should first be addressed by the Court of Appeals, and we decline to consider whether the arbitration agreement is enforceable.

## IV.    CONCLUSION

**{59}** We reverse the Court of Appeals and hold that Plaintiff has the burden to prove that the arbitration agreement is unenforceable on the ground that it is unconscionable. We remand to the Court of Appeals to determine whether the district court erred by granting Defendants' motion to compel arbitration and by dismissing Plaintiff's case.

**{60}    IT IS SO ORDERED.**

_____
**BARBARA J. VIGIL, Justice**

**WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Chief Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

17

_____
**CHARLES W. DANIELS, Justice**

**Topic Index for *Strausberg v. Laurel Healthcare Providers, LLC*, No. 33,331**

**APPEAL AND ERROR**
Fundamental Error
Remand
Standard of Review

**CIVIL PROCEDURE**
Affirmative Claims and Defenses
Arbitration
Burden of Proof
Discovery

**COMMERCIAL LAW**
Uniform Arbitration Act

**CONTRACTS**
Unconscionable

**FEDERAL LAW**
Preemption

**REMEDIES**
Arbitration