This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-41207

D. MARIA SCHMIDT, as Personal
Representative of the WRONGFUL
DEATH ESTATE OF FRANCISCO A.
PADILLA; and CONNIE PADILLA, as
Widow of Francisco Padilla,

       Plaintiffs-Appellees,

v.

WW HEALTHCARE, LLC d/b/a PRINCETON
PLACE NURSING & REHABILITATION; TWO
P. MANAGEMENT, LLC; ONPOINTE
BUSINESS SERVICES, LLC; WSQUARED
ENTERPRISES GP, LLC; WSQUARED
HOLDINGS GP, LLC; TODD MILLER, RN;
HORACE WINCHESTER; JERRY WILLIAMSON;
ANDREW LARK; and DAVID MCCLURE,

       Defendants-Appellants.

APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Maria Sanchez-Gagne, District Court Judge

Hunt Law Firm
Lee R. Hunt
Cynthia L. Zedalis
Santa Fe, NM

Corbin Hildebrandt P.C.
Corbin Hildebrandt
Albuquerque, NM

for Appellees

Sheston Law Group, PLLC

Paul J. Sheston
Scottsdale, AZ

for Appellants

## MEMORANDUM OPINION

**BLACK, Judge Pro Tem.**

**{1}** D. Maria Schmidt, as personal representative of the wrongful death estate of Francisco Padilla, and Connie Padilla (collectively, Plaintiffs) filed a complaint against WW Healthcare, LLC d/b/a Princeton Place Nursing & Rehabilitation; Two P Management, LLC; OnPointe Business Services, LLC; WSquared Enterprises GP, LLC; WSquared Holdings GP, LLC; Todd Miller, RN; Horace Winchester; Jerry Williamson; Andrew Lark; and David McClure (collectively, Defendants), alleging wrongful death and negligence, among other claims. Defendants filed a motion to dismiss and compel arbitration, citing an agreement to arbitrate (the Agreement) signed by Mr. Padilla on May 17, 2020. Plaintiffs argued in response that Mr. Padilla lacked capacity to enter into the Agreement. After a hearing, the district court denied the motion to compel arbitration based on Mr. Padilla's lack of capacity. Defendants appeal the district court's denial of their motion. We agree with Defendants that the district court erred in denying the motion to compel arbitration, as there was not clear and convincing evidence of Mr. Padilla's lack of capacity at the time the Agreement was signed. We reverse and remand for the district court to decide Plaintiffs' other defenses against Defendants' motion to compel arbitration.

## BACKGROUND

**{2}** From April 23, 2020, to May 7, 2020, Francisco Padilla was treated at Presbyterian Hospital in Albuquerque for acute transverse myelitis and paraplegia. He was transferred to Defendants' nursing facility, Princeton Place, on May 7, 2020, for rehabilitation and skilled nursing care. The "Resident Face Sheet" Princeton Place generated for Mr. Padilla on the day of his admission included the following diagnoses:

> [p]araplegia, complete ([p]rimary), . . . [a]cute transverse myelitis in demyelinating disease of central nervous system ([a]dmission)[,] . . . [o]ther speech and language deficits following other cerebrovascular disease, . . . [c]ognitive communication deficit[,] . . . [o]pioid use, unspecified with other opioid-induced disorder.

The above diagnoses were repeated on the attending physician's "Physician Order Report" for the duration of Mr. Padilla's residency at Princeton Place. In addition, according to the New Mexico PASRR Level 1 Identification Screen entered on May 7, 2020, for Mr. Padilla, Princeton Place noted a diagnosed or suspected mental illness of "[o]pioid dependence with opioid-induced mood disorder; [r]ecurrent major depressive

disorder; PTSD; [*p*]*sychosis*; [c]ontinuous opioid dependence; [o]pioid use disorder, severe, in early remission." (Emphasis added.)

**{3}** The Resident Progress Notes taken on May 16, 2020, reflected the following:

> [R]esd remained sleepy/arousable this eve but quickly fell back to sleep as per report from shift prior that resd too sleepy for PT/OT and remained in bed throughout shift, resd slept through pm meal and pm meds . . . resd arousable & awakened reaching for face, *unable to understand words spoken* as resd too sleepy, *concern reported to provider for f/u*.

(Emphases added.) The following day, on May 17, 2020, Mr. Padilla signed a thirty-one-page Princeton Place residency agreement that included the Agreement to arbitrate all disputes arising from his care at the facility by way of private arbitration. On August 22, 2020, Mr. Padilla was found to be "slow to respond" by Princeton Place staff. He was administered Narcan and was then left unattended. A little over one hour later, staff members found Mr. Padilla dead in his room. According to the death certificate, Mr. Padilla died from the "[t]oxic effects of multiple drugs."

**{4}** Plaintiffs filed an amended complaint, alleging wrongful death; negligence; misrepresentation; unfair trade practices; joint and several liability; negligent hiring, monitoring, supervision, training, direction, and retention; loss of chance; loss of consortium; and punitive damages. In response, Defendants filed their motion to dismiss and compel binding private arbitration. Plaintiffs challenged the validity of the Agreement on multiple grounds, arguing that it was "unenforceable, and unconscionable." After a hearing on Defendants' motion, the district court denied the motion holding that "Mr. Padilla lacked mental capacity at the time of contracting." Defendants appeal the district court's order.

**DISCUSSION**

**I.      The District Court Erred in Denying Defendants' Motion to Compel Arbitration**

**{5}** We review a district court's denial of a motion to compel arbitration de novo. *Peavy by Peavy v. Skilled Healthcare Grp., Inc.*, 2020-NMSC-010, ¶ 9, 470 P.3d 218. "New Mexico law . . . require[s] courts to apply generally applicable principles of contract law to arbitration agreements." *Strausberg v. Laurel Healthcare Providers, LLC*, 2013-NMSC-032, ¶ 31, 304 P.3d 409. "The party attempting to compel arbitration carries the burden of demonstrating a valid arbitration agreement." *Corum v. Roswell Senior Living, LLC*, 2010-NMCA-105, ¶ 3, 149 N.M. 287, 248 P.3d 329.

**{6}** However, the party challenging competency has the burden to prove the defense of incompetence to contract. *Heights Realty, Ltd. v. Phillips*, 1988-NMSC-007, ¶ 5, 106 N.M. 692, 749 P.2d 77. "The test of mental capacity is whether a person is capable of understanding in a reasonable manner, the nature and effect of the act in which the

person is engaged." *In re Estate of Head*, 1980-NMCA-096, ¶ 15, 94 N.M. 656, 615 P.2d 271. "The law presumes that every person is competent. To show the contrary, the burden of proof rests on the person asserting lack of capacity to establish the same by clear and convincing proof." *Heights Realty, Ltd.*, 1988-NMSC-007, ¶ 5. "Clear and convincing evidence is evidence that instantly tilts the scales in the affirmative when weighed against the evidence in opposition." *State v. Adonis*, 2008-NMSC-059, ¶ 11, 145 N.M. 102, 194 P.3d 717 (alteration, internal quotation marks, and citation omitted). We therefore consider "whether substantial evidence was presented from which the trial court could properly conclude that the presumption of competency was overcome by clear and convincing evidence." *Heights Realty, Ltd.*, 1988-NMSC-007, ¶ 3.

**{7}** Defendants argue that the district court erred in finding that the Agreement was not valid due to Mr. Padilla's lack of capacity. That is, that Plaintiffs failed to provide clear and convincing evidence that Mr. Padilla lacked capacity on May 17, 2020, to enter into a binding agreement. We agree.

**{8}** In the district court, Plaintiffs argued that Mr. Padilla was not legally competent to execute the Agreement. Plaintiffs pointed to various pieces of evidence to support this argument: (1) Mr. Padilla's diagnoses upon entering Princeton Place, including "opioid dependency, . . . communication deficit, speech and language deficits, cognitive issues," as well as "suspected mental illnesses, including psychosis"; (2) a nurse's note written the day before the Agreement was signed stating that Mr. Padilla was "unable to understand words spoken" and that this concern was reported to a physician for follow-up; and (3) a signed declaration from Connie Padilla recounting, two years after the relevant events, Mr. Padilla's general mental status during his residency at Princeton Place. No evidence was presented that Connie Padilla possessed any medical or psychiatric education, training, or experience. No other doctor's notes, nurse's note entries, or witness statements were presented to support Plaintiffs' position that Mr. Padilla lacked capacity to sign the Agreement on May 17, 2020.

**{9}** Further, Plaintiffs failed to address the fact that on May 18, 2020, the day after Mr. Padilla signed the Agreement, the nursing notes reflect that he was "alert and oriented x4" (meaning that Mr. Padilla was oriented as to his person, place, time, and event); Mr. Padilla "propell[ed him]self to front entrance for transport to . . . methadone clinic"; he was taking medication without difficulty; and had "no distress at this time." This evidence of Mr. Padilla's condition would seem to counter the nurse's note written the night before Mr. Padilla signed the Agreement.

**{10}** In *Heights Realty, Ltd.*, on which Plaintiffs rely, our Supreme Court held that "evidence of a person's prior or subsequent condition is admissible to show the condition at the time in issue." 1988-NMSC-007, ¶ 6. In that case, multiple witnesses close to the individual whose competency was in question, as well as two psychiatrists, testified about the individual's declining capacity over many years. *Id.* ¶¶ 9-12. The Court ultimately held that the district court's finding of a lack of capacity was supported by substantial evidence of the individual's condition "before and after the day the instrument in question was executed." *Id.* ¶ 14. The Court reasoned that "[t]he combined

weight of all the evidence in each case determines the result" and that "[t]he court is entitled to take into consideration the individual's physical condition; the adequacy of consideration; whether or not the transaction was improvident; the relation of trust and confidence between the parties to the transaction and the weakness of the mind of the alleged incompetent person as judged by all other acts within a reasonable time prior and subsequent to the act in question." *Id.* ¶ 6.

**{11}** Here, there was no testimony from individuals close to Mr. Padilla or medical professionals related to a declining mental capacity over a prolonged period of time. Plaintiffs were able to point to Mr. Padilla's mental health diagnoses—which are not necessarily indicative of a lack of capacity, *see State ex rel. Child., Youth & Fams. Dep't v. Christina L.*, 2015-NMCA-115, ¶¶ 18-19, 362 P.3d 155 (noting the difference between "mental illness" and "incapacity")—as well as Connie Padilla's declaration—which stated that "[Mr. Padilla's] mental state began to deteriorate when he was transferred from Presbyterian Hospital to Princeton Place" and that Mr. Padilla seemed to be "overly medicated" and "not all there." This evidence is not sufficient to show a progressive, declining mental capacity.

**{12}** Instead, this case presents facts analogous to those in *In re Estate of Head*. In *In re Estate of Head*, the district court found that "[f]or some years prior to his death . . . at the age of 87 years, [the decedent] had been mentally incompetent from time to time" but "[h]e enjoyed what had been described as 'good days,' i.e., days of competency." 1980-NMCA-096, ¶ 2. He executed a trust agreement, deeds, and instruments of conveyance; and six days later, he signed a first amendment to the trust. *Id.* ¶¶ 3-4. The district court found that the decedent was competent when he signed the trust but incompetent when he executed the first amendment to the trust. *Id.* This Court reversed, pointing to the testimony of three doctors and four witnesses that did not support the trial court's finding that the decedent was not competent at the time of the execution of the first amendment to the trust. *Id.* ¶ 11. In finding that the challenge to the decedent's competency had not met the "clear and convincing" standard, this Court noted:

> His mental powers were to some extent impaired. This had been his condition from time to time. But the fact that the mind is disordered or diseased as to any one of its parts, or, that its healthy operation is in any function disturbed, is not a mental incompetence which affects the whole mind. If the peculiar phase of mania had no influence upon the act brought into question, such act is not in law invalidated. It would not render [the decedent] legally incompetent, incapable of entering into a civil contract, execute a trust or an amendment thereof.

*Id.* ¶ 18.

**{13}** We have far less evidence in the record here than that found wanting in *In re Estate of Head*. The only evidence presented here is that Mr. Padilla: (1) had a cognitive communication and language deficit at the time he was admitted to Princeton Place; (2) suffered from opioid dependence with opioid-induced mood disorder; (3) had

a recurrent major depressive disorder; and (4) was groggy, difficult to arouse, and unable to comprehend words spoken to him at 2:14 a.m. the night before he signed the Agreement. This is insufficient "clear and convincing" evidence that he was not capable of understanding, in a reasonable manner, the nature and effect of signing the Agreement on the day of May 17, 2020, especially when weighed against the fact that (1) there were no notes supporting incapacity *on the day* of the execution of the Agreement; and (2) the day after the execution of the Agreement, nursing notes reflect that Mr. Padilla was "alert and oriented x4," "propell[ed him]self to front entrance for transport to . . . methadone clinic," was taking medication without difficulty, and had no distress at the time. Because no evidence was presented about Mr. Padilla's capacity on the day the Agreement was signed, and the evidence about his mental state in the days before and after the signing varied greatly, we do not believe there was clear and convincing evidence that could leave the trial court with an "abiding conviction" that Mr. Padilla was incapacitated on May 17, 2020. *See Adonis*, 2008-NMSC-059, ¶ 11.

## II.    The District Court Must Address Plaintiffs' Other Arguments

**{14}**    Based on *In re Estate of Head* and *Heights Realty, Ltd.*, we cannot sustain the district court's conclusion that Mr. Padilla was incompetent to execute the Agreement on May 17, 2020. That does not end our review of this matter, however. Plaintiffs also challenged the Agreement as substantively unconscionable—another "affirmative defense to contract enforcement," *see Peavy*, 2020-NMSC-010, ¶ 10—and raised numerous other arguments against compelling arbitration. Determining whether substantive unconscionability exists "requires a determination that the one-sidedness of an arbitration agreement is unfair and unreasonable." *Id.* ¶ 13. While the party arguing unconscionability "does not have to make any particular evidentiary showing," it can "persuade the factfinder by analyzing the contract on its face." *Id.* ¶ 10 (internal quotation marks and citation omitted). While Plaintiffs raised their unconscionability argument in the district court, no such fact-finding or determination about the reasonableness of the Agreement exists in the district court's order before this Court. Because the district court only addressed Plaintiffs' arguments related to Mr. Padilla's lack of capacity, we reverse and remand for the district court to address Plaintiffs' unconscionability argument, as well as Plaintiffs' other arguments as needed. *See Green v. Gen. Accident Ins. Co. of Am.*, 1987-NMSC-111, ¶ 22, 106 N.M. 523, 746 P.2d 152 ("Where the ends of justice require, this Court may remand a case to district court for the making of proper findings of fact.").

## CONCLUSION

**{15}**    We reverse and remand.

**{16}    IT IS SO ORDERED.**

**BRUCE D. BLACK, Judge Pro Tem.**

**WE CONCUR:**

**JENNIFER L. ATTREP, Chief Judge**

**ZACHARY A. IVES, Judge**